# No. 14-35393

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

➤➤◄◄

MICROSOFT CORPORATION, a Washington Corporation

*Plaintiff-Appellee*,

v.

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION

*Defendants-Appellants*.

On Appeal From The United States District Court
For The Western District Of Washington At Seattle

## OPENING BRIEF OF DEFENDANTS-APPELLANTS

Brian C. Cannon
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Kathleen M. Sullivan
Ellyde R. Thompson
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue
22nd Floor
New York, NY  10010
(212) 849-7000

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Motorola Mobility LLC (f/k/a Motorola Mobility, Inc.) states that it is a wholly owned subsidiary of Google Inc., a publicly held company.

The stock of Motorola Solutions, Inc. (f/k/a Motorola, Inc.) is publicly traded. No publicly held entity owns 10 percent or more of the stock of Motorola Solutions, Inc. Motorola Solutions, Inc. has no parent corporation.

Arris Group purchased the entity formerly known as General Instrument Corp. in April 2013. The patents in suit formerly owned by General Instrument Corp. now belong to Motorola Mobility LLC.

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.......................................i

PRELIMINARY STATEMENT ...................................................................1

JURISDICTIONAL STATEMENT ...............................................................3

ISSUES PRESENTED.............................................................................3

STATEMENT OF THE CASE.....................................................................4

    A.    Motorola's SEPs And SSO Commitments............................................5

    B.    Microsoft's Actions Against Motorola ...............................................6

    C.    Motorola's Offers To License Its SEPs ..............................................7

    D.    Motorola's Responsive Actions Against Microsoft..............................8

    E.    The District Court's Bifurcation Of The Case .....................................9

    F.    The Bench Trial On The RAND Rate.................................................10

    G.    The Jury Trial On Breach.................................................................12

    H.    The Post-Trial Rulings ....................................................................14

SUMMARY OF ARGUMENT ...................................................................15

STANDARD OF REVIEW .......................................................................17

ARGUMENT ........................................................................................18

I.    JURISDICTION OVER THIS APPEAL PROPERLY LIES IN THE FEDERAL CIRCUIT .............................................................................18

II.    THE DISTRICT COURT ERRED IN ISSUING THE RAND ORDER......20

    A.    The District Court Erred In Severing The RAND-Rate Determination From The Overall Determination Of Good Faith .......20

    B.    The District Court Erred In Issuing An Advisory Opinion.................22

C.    The District Court Erred Under Governing Federal Circuit Law In Setting The RAND Rate ......................................................25

1.    The District Court Erred In Failing To Set A Date For The Hypothetical Negotiation.................................................25

2.    The District Court Erred In Using Speculative Inferences From Non-Comparable Pool Rates.............................................28

3.    The District Court Erred In Ignoring Motorola's Historical Licenses ....................................................................32

III.    MOTOROLA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BREACH OF THE IMPLIED DUTY OF GOOD FAITH ..........33

A.    No Reasonable Jury Could Find Breach Of Good Faith.....................34

1.    The District Court Erroneously Instructed The Jury On Good Faith........................................................................34

2.    The Evidence Is Legally Insufficient To Support A Finding Of Breach Of Good Faith ...............................................37

B.    Motorola Was Entitled To Judgment As A Matter Of Law On Damages ...........................................................................40

1.    The *Noerr-Pennington* Doctrine Bars Damages Arising From Protected Litigation Conduct ...........................................41

2.    Washington Law Bars Recovery Of Attorneys' Fees As Damages In A Breach Of Contract Case .................................43

3.    Damages Are A Necessary Element Of Microsoft's Contract Claim ........................................................................45

IV.    THE DISTRICT COURT ABUSED ITS DISCRETION IN KEY EVIDENTIARY RULINGS...........................................................47

A.    The RAND Order Findings Were Inadmissible.................................48

1.    The RAND Order Findings Lacked Relevance ......................48

2.    The RAND Order Findings Were Prejudicial .........................50

        3.      Motorola Did Not Waive Objection To Admission Of The RAND Order Findings.........................................................51

    B.    The FTC Order Concerning Motorola's SEPs Was Inadmissible ......54

CONCLUSION.......................................................................................57

REQUEST FOR ORAL ARGUMENT ....................................................59

STATEMENT OF RELATED CASES ....................................................60

CERTIFICATE OF COMPLIANCE WITH  FRAP 32(A)(7)(C) & CIRCUIT RULE 32-1.......................................................................61

CERTIFICATE OF SERVICE ................................................................62

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) ................................................................43

*Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.*,
No. CV 08-5526-GW, 2010 WL 1525687 (C.D. Cal. Apr. 12, 2010) .........21, 38

*Apple Inc. v. Motorola, Inc.*,
869 F. Supp. 2d 901 (N.D. Ill. 2012),
*aff'd in part and rev'd in part*, 757 F.3d 1286 (Fed. Cir. 2014) ..................46, 47

*Apple Inc v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2012) ......................................................24, 33, 42, 45

*Apple, Inc. v. Motorola Mobility, Inc.*,
No. 11-cv-178, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) ..................37, 42

*Apple Inc. v. Motorola Mobility, Inc.*,
No. 11-cv-178, 2012 WL 5416931 (W.D. Wis. Nov. 2, 2012).......................23

*Apple, Inc. v. Motorola Mobility, Inc.*,
No. 11-v-178, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012).......................4, 23

*Axthelm & Swett Constr., Inc. v. Caudill*,
No. 35995-9-I, 1997 WL 241575 (Wash. Ct. App. May 12, 1997) ..................35

*BBS Techs., Inc. v. Remington Arms Co., No. Civ. A. 05-98-DLB*,
2005 WL 3132307 (E.D. Ky. Nov. 22, 2005) ....................................................22

*Estate of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014) ............................................................................17

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959).........................................................................................52

*Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*,
655 F. Supp. 2d 473 (D.N.J. 2009) ...................................................................48

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988)...........................................................................................17

*Bunnett v. Smallwood*,
793 P.2d 157 (Colo. 1990)................................................................................45

*Cavell v. Hughes*,
629 P.2d 927 (Wash. Ct. App. 1981).............................................................21, 36

*Chamberlain Grp., Inc. v. Skylink Tech., Inc.*,
  381 F.3d 1178 (Fed. Cir. 2004) ........................................................18

*Christianson v. Colt Indus.*,
  486 U.S. 800 (1988) ..........................................................................18

*City of Seattle v. McCready*,
  931 P.2d 156 (Wash. 1997) ........................................................43, 44

*Coastal States Mktg., Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) ..........................................................41

*Curtis v. N. Life Ins. Co.*,
  No. 61372-3-I, 2008 WL 4927365 (Wash. Ct. App. Nov. 17, 2008)................35

*DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*,
  317 P.3d 543 (Wash. Ct. App. 2014)................................................46

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962) ..........................................................................52

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
  890 F.2d 165 (9th Cir. 1989) ............................................................52

*Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*,
  No. Civ.A. 02-243(JLL), 2006 WL 20521 (D. N.J. Jan. 3, 2006) ....................46

*DV Realty Advisors LLC v. Policemen's Annuity & Benefit Fund of Chi., Ill.*,
  75 A.3d 101 (Del. 2013) ....................................................................34

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) ........................................................18

*Ericsson Inc. v. D-Link Sys., Inc.*,
  No. 6:10-CV-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013)....................24

*Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n*,
  No. 60909-2-I, 2009 WL 429893 (Wash. Ct. App. Feb. 23, 2009)........21, 34, 36

*Flast v. Cohen*,
  392 U.S. 83 (1968)..............................................................................23

*Gaglidari v. Denny's Restaurants, Inc.*,
  815 P.2d 1362 (Wash. 1991) ............................................................48

*Gantt v. City of Los Angeles*,
  717 F.3d 702 (9th Cir. 2013) ............................................................17

*Gaylord v. Nationwide Mut. Ins. Co.*,
  776 F. Supp. 2d 1101 (E.D. Cal. Mar. 4, 2011)................................48

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970),
  *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971)................................10

*Gordon v. United States*,
117 U.S. 697 (1864) ..................................................................... 23

*Gribben v. United Parcel Service, Inc.*,
528 F.3d 1166 (9th Cir. 2008) ..................................................... 55

*Gruver v. Midas Int'l Corp.*,
925 F.2d 280 (9th Cir. 1991) ....................................................... 44

*Gunn v. Minton*,
133 S. Ct. 1059 (2013) ................................................................. 18

*Matter of Hollingsworth's Estate*,
560 P.2d 348 (Wash. 1977) ......................................................... 36

*Hunter v. Cnty. of Sacramento*,
652 F.3d 1225 (9th Cir. 2011) ..................................................... 17

*Iliadis v. Wal-Mart Stores, Inc.*,
922 A.2d 710 (N.J. 2007) ............................................................ 34

*In re Innovatio IP Ventures, LLC Patent Litig.*,
No. 11-cv-9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) .............. 4

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
No. 13-cv-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014) ....... 24

*Ketchum v. Albertson Bulb Gardens, Inc.*,
252 P. 523 (Wash. 1927) ............................................................. 46

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998) ..................................................... 41

*Kramas v. Sec. Gas & Oil Inc.*,
672 F.2d 766 (9th Cir. 1982) ....................................................... 55

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ................................................... 26, 32

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .............................................. 26, 28

*Luxpro Corp. v. Apple Inc.*,
No. C 10-03058 JSW, 2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ..... 41

*MHC Fin. Ltd. P'ship v. City of San Rafael*,
714 F.3d 1118 (9th Cir. 2013) ..................................................... 17

*Microsoft Corp. v. Immersion Corp., No.*,
C07-936RSM, 2008 WL 2998238 (W.D. Wash. Aug. 1, 2008) ......... 46

*Microsoft Corp. v. Motorola, Inc.*,
564 F. App'x 586 (Fed. Cir. 2014) .......................................... 15, 20

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ................................................................18, 42, 43

*Muniz v. Microsoft Corp.*,
   No. C10-0717-JCC, 2010 WL 4482107 (W.D. Wash. Oct. 29, 2010) .............45

*New Jersey Tpk. Auth. v. PPG Indus., Inc.*,
   16 F. Supp. 2d 460 (D.N.J. 1998), *aff'd*, 197 F.3d 96 (3d Cir. 1999) ...............56

*Nw. Ind. Forest v. Dept. of Labor & Indus.*,
   899 P.2d 6 (Wash. 1995) ............................................................................45

*Oracle Corp. v. SAP AG*,
   No. 12-16944, 2014 WL 4251570 (9th Cir. Aug. 29, 2014) ..............................30

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978) .......................................................................26

*Parental Guide of Tex., Inc. v. Thomson, Inc.*,
   446 F.3d 1265 (Fed. Cir. 2006) .....................................................................19

*Polar Bear Productions, Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) .........................................................................31

*Portney v. CIBA Vision Corp.*,
   401 F. App'x 526 (Fed. Cir. 2010) .................................................................19

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993)........................................................................................41

*Realtek Semiconductor Corp. v. LSI Corp.*,
   No. C-12 03451 RMW, 2012 WL 4845628 (N.D. Cal. Oct. 12, 2012) .......22, 35

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ...........................................................29, 30, 32

*Riles v. Shell Exploration & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002) .....................................................................32

*Rohm & Hass Co. v. Crystal Chem. Co.*,
   736 F.2d 688 (Fed. Cir. 1984) ......................................................................43

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923
   (9th Cir. 2006)..............................................................................................42

*Stephen Haskell Law Offices, PLLC*, No. CV–10–437, 2011 WL 1303376
   (E.D. Wash. Apr. 5, 2011) ............................................................................43

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ...................................................................41, 42

*U.S. Valves, Inc. v. Dray*,
   212 F.3d 1368 (Fed. Cir. 2000) .....................................................................19

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ......................................................26

*United States v. Sine*,
   493 F.3d 1021 (9th Cir. 2007) ......................................................51

*Wall Data v. L.A. County Sherriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ........................................................31

*Walter Implement, Inc. v. Focht*,
   730 P.2d 1340 (Wash. 1987) ........................................................43

*Wang Labs., Inc. v. Toshiba Corp.*,
   993 F.2d 858 (Fed. Cir. 1993) ......................................................27

*Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*,
   No. 97 Civ. 4914, 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997),
   *aff'd*, 149 F.3d 134 (2d Cir. 1998) ...............................................21

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ......................................................41

## Statutes

19 U.S.C. § 1337 ..............................................................................42

28 U.S.C. § 1291 ................................................................................3

28 U.S.C. § 1332 ................................................................................3

35 U.S.C. § 282 ................................................................................49

35 U.S.C. § 283 ................................................................................42

35 U.S.C. § 284 ....................................................................19, 25, 26

35 U.S.C. § 285 ................................................................................43

## Rules

Fed. R. App. P. 26.1 .............................................................................i

Fed. R. App. P. 32(a)(7)(C) ..............................................................61

Fed. R. Civ. P. 38 .............................................................................52

Fed. R. Evid. 401 ........................................................................47, 48

Fed. R. Evid. 402 ..............................................................................47

Fed. R. Evid. 403 ........................................................................47, 55

Fed. R. Evid. 408 ..........................................................................47, 55, 56


## Other Authorities

Wash. Prac., Contract Law And Practice § 5:12 (2013).............................21, 34, 35

Wash. Prac., Contract Law & Practice § 14:2 (2013) ............................................46

## PRELIMINARY STATEMENT

This appeal involves a patent licensing dispute between Microsoft Corporation ("Microsoft") and Motorola, Inc., Motorola Mobility LLC, and General Instrument Corporation (collectively, "Motorola") that Microsoft and the district court transformed into a breach-of-contract case under Washington law. Motorola holds patents on wireless Internet communications ("WiFi") and video coding technologies that it declared essential to standards set by two standards-setting organizations ("SSOs"), committing to make those standard-essential patents ("SEPs") available on reasonable and non-discriminatory ("RAND") terms. Motorola made opening offers to license its SEPs to Microsoft at a rate Microsoft deemed too high. Rather than make a counteroffer and engage in the bilateral negotiations that are standard industry practice, Microsoft sued, alleging that Motorola's offers breached its RAND commitments to the SSOs, and Motorola sued Microsoft for patent infringement in response.

Microsoft's contract action centered on whether Motorola had breached the duty of good faith and fair dealing implied by its RAND commitments. The U.S. District Court for the Western District of Washington (Robart, J.) held it necessary to determine the "true RAND royalty rate" for Motorola's patents at bench trial before a jury could decide that question. After a jury trial at which the jury was directed to

follow the court's findings from the bench trial, the jury found breach and the district court entered a $14.52 million judgment for Microsoft.

That judgment rests on a cascade of errors warranting this Court's reversal. *First*, the district court erred in determining that it had to find a "true RAND royalty rate" at bench trial before the jury could determine breach. *Second*, the RAND rate the court set at bench trial lacked any foundation under governing Federal Circuit patent damages law. *Third*, the court virtually directed the jury to find for Microsoft by instructing it to follow the court's RAND rate and other underlying findings from the bench trial, as well as making other instructional and evidentiary errors. *Fourth*, the court awarded Microsoft its attorneys' fees and relocation costs in response to Motorola's suits for injunctive relief—both impermissible bases for contract damages.

The district court's errors set a dangerous precedent that, unless reversed, will encourage parties in RAND licensing disputes to allege breach of contract whenever they receive offers that they consider to be too high, thereby creating additional state-law litigation over SEPs and balkanizing the enforcement of RAND obligations. Those obligations have long been successfully enforced through private bilateral negotiations and orderly adjudication within the patent system, and should not now be subject to piecemeal adjudication by courts applying state contract law. This Court should transfer jurisdiction back to the Federal Circuit or reverse or vacate the judgment below.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction under 28 U.S.C. § 1291. Motorola filed a timely notice of appeal on November 12, 2013 (ER183-86) from the court's entry of partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) (ER1-2).

## ISSUES PRESENTED

1. Whether appellate jurisdiction properly lies with the Federal Circuit, given that the district court constructively amended the breach-of-contract complaint into one requiring resolution of substantial issues of patent law.

2. Whether the district court erred in (a) holding it necessary to determine a "true RAND royalty rate" at bench trial prior to a jury trial on breach of good faith; (b) issuing an advisory opinion on the supposed RAND rate; and/or (c) determining a supposed RAND rate that contravenes governing Federal Circuit patent damages law.

3. Whether the district court erred in denying judgment as a matter of law to Motorola (a) on liability for breach of good faith because the good-faith instructions were erroneous and no reasonable jury could find breach based on Motorola's opening offer letters and protected actions for injunctive relief; and/or (b) on damages for such breach because attorneys' fees and relocation costs incurred in response to Motorola's protected actions for injunctive relief are impermissible bases for contract damages.

4.  Whether the district court abused its discretion in admitting into evidence testimony concerning (a) its own RAND rate findings from the bench trial; and/or (b) a Federal Trade Commission ("FTC") Decision and Order settling an investigation concerning Motorola's SEPs.

## STATEMENT OF THE CASE

The unprecedented decision below is the first to find a SEP holder to have breached its RAND commitments in violation of state contract law,[1] and the first in which a federal district court ever purported to set a global rate for a global SEP portfolio.[2]  SEP licensing disputes are normally resolved through private bilateral negotiations and (if those fail) through patent infringement litigation subject to review by the Federal Circuit under a uniform body of federal patent law.  This case thus involves novel questions about whether state-law contract actions may be used to set global patent licensing terms in satellite litigation outside the patent system.

---

[1]  Apple, Inc. asserted similar contract theories against Motorola in the U.S. District Court for the Western District of Wisconsin, which rejected them after Apple refused to commit to accepting any license on terms set by the court.  *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-v-178, 2012 WL 7989412, at *4 (W.D. Wis. Nov. 8, 2012), *appeal dismissed*, Fed. Cir. No. 2013-1150 (May 21, 2014).

[2]  One other district court has purported to determine a RAND rate for SEPs, *see In re Innovatio IP Ventures, LLC Patent Litig.*, No. 11-cv-9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013), but did so where RAND commitments were raised as a defense in a patent case, not affirmatively a standalone contract action as here.

### A. Motorola's SEPs And SSO Commitments

Motorola, a pioneer electronics technology company, has long contributed patented technology to a variety of standards set by different SSOs. Declaring its patents essential to standards set by the International Telecommunications Union ("ITU") and Institute of Electrical and Electronics Engineers ("IEEE") among others (ER1229-30, ER1265-66), Motorola has historically used 2.25% of the end-product price as its standard starting point for RAND licensing negotiations regarding those patents, (ER257, ER285, ER372, ER470, ER1320, ER1375).

At issue in this case are Motorola's patents essential to the 802.11 (WiFi) standard set by the IEEE and to the H.264 (video coding) standard set by the ITU. It is undisputed that Motorola committed to license those SEPs on RAND terms. ER253, ER472-73, ER1230, ER1266; *see also* ER 979. Motorola's letter of assurance to the ITU stated:

> The Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions. . . . Negotiations are left to the parties concerned and are performed outside the ITU-T, ITU-R, ISO, or IEC.

ER1230. And Motorola's letter of assurance to the IEEE stated:

> The Patent Holder is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the (Proposed) IEEE Standard.

ER1266.

Motorola's SSO commitments do not create a license, and the relevant SSO policies expressly contemplate that RAND terms are to be arrived at through bilateral negotiations between SEP holders and those users of the standard who apply for a license. For example, the IEEE bylaws state that "[n]o license is implied by the submission of a Letter of Assurance" (ER1201, ER1266), and the ITU guidelines provide that "[t]he detailed arrangements arising from patents (licensing, royalties, etc.) are left to the parties concerned, as these arrangements might differ from case to case" (ER1182, ER1218). Neither Motorola's declarations to the ITU or IEEE nor any ITU and IEEE policies contain any language prohibiting Motorola or any other SEP holder from seeking an injunction or exclusion order.

## B. Microsoft's Actions Against Motorola

The Motorola offers to Microsoft at issue here arose from *Microsoft's* litigation against Motorola for the supposed use of Microsoft's patents after Motorola's license to those patents expired in 2007. ER277-78, ER281. While the parties discussed the possibility of cross-licensing each other's patents (ER278-79, ER281, ER283, ER324, ER333, ER355), Microsoft sued Motorola for patent infringement before they could do so (ER281-82, ER337-38, ER469, ER1324-32).

On October 1, 2010, Microsoft sued Motorola in the International Trade Commission ("ITC"), alleging patent infringement by certain features on Motorola's smartphones and seeking to bar Motorola from importing its smartphones into the

United States. ER253, ER281. That same day, Microsoft also sued Motorola for patent infringement in the U.S. District Court for the Western District of Washington. ER1324-42. Microsoft had prepared for these lawsuits for months throughout 2010. ER336.

After Microsoft filed its lawsuits against Motorola, Microsoft again raised the possibility of a cross-license agreement (ER282, ER324), and invited Motorola to present its patents for discussion (ER282, ER324, ER469). Horacio Gutierrez, deputy general counsel at Microsoft, told Motorola that "he wanted to put them on the table so that we could have a negotiation and settle this quickly." ER283. The parties scheduled a meeting for October 22, 2010 to discuss a broad patent cross-license. ER274, ER281, ER324-25.

### C. Motorola's Offers To License Its SEPs

On October 21, 2010, the day before the parties' scheduled meeting, Motorola sent Microsoft a letter offering to grant Microsoft a worldwide license to Motorola's portfolio of 802.11 (WiFi) SEPs

> under reasonable and non-discriminatory terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each 802.11 compliant product, subject to a grant back license under the 802.11 essential patents of Microsoft.

ER1136. On October 29, 2010, Motorola sent Microsoft a second letter, offering to grant Microsoft a worldwide license to Motorola's portfolio of H.264 (video coding) SEPs, again stating that such a license was offered

on a non-discriminatory basis on reasonable terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each H.264 compliant product, subject to a grant back license under the H.264 patents of Microsoft.

ER1158.  In each letter, Motorola indicated a willingness to negotiate:  "If Microsoft is only interested in licensing some portion of this portfolio, Motorola is willing to enter into such a license, also on RAND terms."  ER1136, ER1158.  In each letter, Motorola requested that Microsoft respond within 20 days (ER1136, ER1158) to "encourage discussion within that time frame" (ER286).

It is undisputed that Microsoft made no response or counteroffer of any kind, written or telephonic, to either of Motorola's October 21 or 29, 2010 offer letters, despite its earlier request that Motorola "put [its patents] on the table."   ER283, ER326.  Rather, on November 9, 2010, Microsoft filed this action against Motorola in the Western District of Washington, claiming that Motorola had breached its RAND commitments to the SSOs.  ER1111, ER1128.

### D.  Motorola's Responsive Actions Against Microsoft

Faced with Microsoft's three patent infringement actions, Motorola filed its own patent infringement actions against Microsoft on November 10, 2010 in the Western District of Wisconsin and the Southern District of Florida and on November 22, 2010 in the ITC.  ER269-70, ER327, ER454, ER1073.  At Microsoft's urging, the Western District of Wisconsin transferred Motorola's patent action to the Western District of Washington, Order Granting Mot. To Transfer Venue, *Motorola Mobility,*

*Inc. v. Microsoft Corp.*, No. 10-cv-699, ECF 44 (W.D. Wis. Feb. 18, 2011), which consolidated it with Microsoft's breach-of-contract suit, ER1071-82. Microsoft amended its breach-of-contract complaint in February 2011 to allege that Motorola had breached its obligation to license on RAND terms not only by sending its opening offer letters but also by filing its two patent infringement lawsuits. ER1103. In July 2011, Motorola filed an action in Germany alleging that Microsoft's Xbox and Windows infringe Motorola's German patents essential to the H.264 (video coding) standard. ER269.

### E. The District Court's Bifurcation Of The Case

In an order entered June 6, 2012 rejecting the parties' cross-motions for summary judgment on Microsoft's breach-of-contract claim (ER175, ER178-79), the district court held that it was necessary to determine a "true RAND royalty rate" before the question of breach of the duty of good faith could be decided (ER179-80) ("to determine whether Motorola's offers were so blatantly unreasonable as to breach its duty of good faith, it is ***necessary*** in this instance to compare the offer against a ***true RAND royalty rate***") (emphasis added); *see* ER140. Motorola never consented to a bench-trial RAND-rate determination prior to a jury determination of breach. To the contrary, Motorola filed a motion for partial summary judgment on July 18, 2012 (ER989-1017) objecting to any such sequence and arguing that a jury should determine breach before the court considered any RAND license or RAND rate.

ER996-97. The district court denied Motorola's motion on October 10, 2012. ER129-54.[3]

### F. The Bench Trial On The RAND Rate

The district court held a six-day bench trial in November 2012, hearing testimony from 18 witnesses. ER1456. On April 19, 2013, the court issued a 207-page order ("RAND Order") setting forth findings of fact and conclusions of law purporting to determine a RAND "rate and range" for Motorola's global portfolios of WiFi and video coding SEPs. ER1451-1657.

Conceding that "[t]he IEEE and ITU have declined to provide a definition of what constitutes RAND terms and conditions" and "do not attempt to determine what constitutes a reasonable royalty rate" (ER1457), the district court devised its own elaborate formula for deciding what RAND royalty rate the parties would have agreed to in a hypothetical negotiation. The court acknowledged the factors set forth to guide such hypothetical-license damages analysis in patent cases under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified*

---

[3] The district court later found that Motorola had waived jury trial as to the RAND rate and thus waived any objection to admission of the RAND-rate findings at jury trial. ER103-05. But the statements by Motorola counsel on which the court relied merely agreed "that the court would decide all the material terms of the RAND license." ER104. Any doubt about Motorola's consent was resolved by its subsequent summary judgment motion (ER989-1017) objecting to the court's procedure and to the court's plan to create a license for the parties, which the court later abandoned (ER131).

*and aff'd*, 446 F.2d 295 (2d Cir. 1971). ER1457, ER1480-85. But the court held that those factors must be modified in the RAND context (ER1579, ER1483-91) to reflect what the court determined are the purposes of RAND commitments: preventing patent hold-up ("[t]he ability of a holder of an SEP to demand more than the value of its patented technology and to attempt to capture the value of the standard itself") (ER1471) and royalty stacking ("[t]he payment of excessive royalties to many different holders of SEPs") (ER1473).

Applying that modified hypothetical-license analysis, the court determined that Motorola's SEPs provided minimal value to the H.264 and 802.11 standards (ER1508, ER1534, ER1542, ER1547, ER1552-53, ER1560, ER1562, ER1565, ER1645, ER1658-59), disregarded as irrelevant (ER1583-84, ER1590, ER1592) all historical evidence of the rates that real-world licensees have agreed to pay Motorola up to 2.25% of the net selling price of products incorporating the applicable WiFi and video coding standards (ER1674, ER1696, ER1706, ER1719, ER1734), and looked instead to the royalty rate structure of two private patent pools in which some companies (not including Motorola) have pooled their H.264 and 802.11 SEPs (ER1599-1600, ER1607, 1621-23, ER1631). The court reasoned that (i) all essential patents, including Motorola's, are assumed to be part of the pools (ER1618-19); (ii) Microsoft views membership in the pools as providing *twice* as much value as it receives in royalty rates (ER1620); (iii) Microsoft is equivalent to Google because both

11

companies have an array of software products (ER1620-21); and (iv) because Google owns Motorola, Microsoft's value analysis for pool participation is directly applicable to Motorola (ER1620-21). The district court nowhere set a date for the supposed hypothetical negotiation, and omitted to note that Google did not acquire Motorola until 2012 (1.5 years after the offer letters).

Devising a complex series of multivariable formulas not proposed by either party (ER1621-23), the court concluded from this pool-based analysis that the RAND rate for Motorola's H.264 SEPs "is three times the pool rate" for the MPEG-LA H.264 patent pool (ER1623), and that the RAND rate for Motorola's 802.11 SEPs is the average of three "indicators" including the pool rate from the Via Licensing 802.11 patent pool (ER1639, ER1653). Thus, the court set a RAND royalty rate for Motorola's H.264 SEP portfolio at 0.555 cents per unit with a range of 0.555 cents to 16.389 cents per unit, and a RAND royalty rate for Motorola's 802.11 SEP portfolio at 3.471 cents per unit with a range of 0.8 cents to 19.5 cents per unit. ER1458, ER1657.

## G. The Jury Trial On Breach

Microsoft's breach-of-contract claim was tried before a Seattle jury from August 26 to September 4, 2013. The district court held before trial, over Motorola's objection (ER630-47), that the court-determined RAND rate and range calculation, and all the court's findings underlying them, could be introduced through witness

testimony at the jury trial (ER108-09), and could not be challenged by Motorola on cross-examination (ER109). At the jury trial, Microsoft repeatedly presented the district court's RAND rate and underlying findings to the jury through its witnesses (ER320, ER322, ER380, ER382-85), arguing that in comparison, Motorola's opening offer was "blatantly unreasonable" (ER321, ER519).

It was undisputed at trial that (i) Motorola sent its October 2010 opening offer letters to Microsoft at Microsoft's request as part of the parties' efforts to negotiate patent peace (ER284, ER355), (ii) Motorola's October 2010 offer letters expressed Motorola's standard baseline rate (ER285-86, ER372), (iii) it was common industry practice to give a time limit such as the 20-day time limit included in the letters (ER286-87), and (iv) companies typically respond to such opening offers with a counteroffer (ER284, ER317, ER335, ER434, ER470-71), and indeed, as Microsoft's own executive Mr. Gutierrez testified, Microsoft itself rejects opening offers more than 99% of the time (ER353-54). It was also undisputed that the relevant RAND commitments specifically contemplate such bilateral negotiations (ER472-73, ER1182, ER1229), which are standard industry practice for patent licensing, including for SEPs (ER284-86, ER313, ER335-36, ER351).

Microsoft's evidence of damages rested on (i) attorneys' fees and costs Microsoft had incurred in defending against Motorola's patent actions seeking injunctive relief (ER453, ER455), and (ii) costs Microsoft had incurred in relocating a

distribution facility from Germany to the Netherlands after Motorola sought an injunction against infringing Microsoft xBox sales in Germany (ER362-66, ER415-17).

On September 4, 2013, the jury returned a verdict finding that Motorola had breached its contractual commitments to the ITU and IEEE and awarding Microsoft a total of $14.52 million in damages: $11.49 million for the relocation of the German distribution facility and $3.03 million in attorneys' fees incurred as a result of Motorola's "conduct in seeking injunctive relief." ER44-46.

### H.    The Post-Trial Rulings

Motorola moved for judgment as a matter of law at both the close of Microsoft's case and at the close of evidence. ECF 904; ECF 905. In a joint order (ER15-43) the district court denied both motions, ruling that Microsoft had introduced sufficient evidence that Motorola had breached its duty of good faith and fair dealing by making a non-RAND opening offer (ER26-28) and by seeking injunctive relief (ER32-33), and that Microsoft had sufficiently proved cognizable damages (ER36-42).

Following the September 2013 jury verdict, Microsoft moved for entry of partial final judgment pursuant to Federal Rule of Civil Procedure 54(b), which the district court granted on November 12, 2013. ER1-14.

Motorola filed its notice of appeal to the Federal Circuit on November 12, 2013. ER183-86. On November 21, 2013, Microsoft filed a motion to transfer the appeal to this Court, which the Federal Circuit granted on May 5, 2014. *Microsoft Corp. v. Motorola, Inc.*, 564 F. App'x 586 (Fed. Cir. 2014).

## SUMMARY OF ARGUMENT

Jurisdiction lies exclusively in the Federal Circuit, for the district court transformed this case into one necessarily involving resolution of substantial issues of patent law. Thus, while this Court plausibly had appellate jurisdiction over the earlier interlocutory appeal from the anti-suit injunction in this case, the current appeal requires transfer to the Federal Circuit.

If this Court retains appellate jurisdiction, it should reverse or vacate and remand for new trial. The district court improperly bifurcated the case into a bench trial on "the true RAND royalty rate" for Motorola's SEPs and a jury trial on whether Motorola had breached the duty of good faith implied by its RAND commitments. Any such bifurcation is precluded by Washington contract law, which requires a factfinder to take into account the entire context and circumstances surrounding the alleged breach. Moreover, any finding of a RAND rate in the abstract here amounted to an impermissible advisory opinion. And in any event, the district court erred under settled Federal Circuit law in setting a supposed RAND rate based on a hypothetical-license analysis that failed to set any date for the negotiation, rested on speculative

inferences from non-comparable patent pool royalty rates, and disregarded Motorola's real-world historical licenses.

Even if the errors in the RAND Order do not require reversal, Motorola was entitled to judgment on contract breach and damages. The district court erroneously instructed that breach of good faith could be found based on any one of a set of enumerated factors, failing to require the jury to consider the entire context and circumstances and affirmatively instructing the jury to treat Motorola's subjective good faith as an optional factor. Whether or not the instructions erred, no reasonable jury could find breach of good faith based on mere opening offers and suits for injunctive relief allowed by the relevant RAND commitments. And, as a matter of law, *Noerr-Pennington* and Washington law (which adopts the American rule on attorneys' fees) preclude damages for Microsoft's costs incurred in response to Motorola's protected litigation conduct in seeking injunctive relief.

At a minimum, a new trial is required based on evidentiary error. The district court abused its discretion in admitting conclusive testimony about its own findings at bench trial concerning the supposed RAND rate and about an FTC order settling an investigation of Motorola's SEP practices that involved no factual findings or admissions of wrongdoing.

## STANDARD OF REVIEW

This Court reviews de novo the district court's denial of a renewed motion for judgment as a matter of law, deciding "if, under governing law, there can be but one reasonable conclusion as to the verdict. *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1131-32 (9th Cir. 2013). This Court also reviews de novo whether a jury instruction misstated the relevant law, *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (quotation omitted), requiring vacatur and remand for new trial, "unless the error is more probably than not harmless," *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (quotation omitted), or entry of judgment if no properly instructed jury could have reached the verdict, *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513 (1988).

To vacate on the basis of an evidentiary ruling, this Court must conclude both that the district court abused its discretion and that the error was prejudicial. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 462 (9th Cir. 2014) (en banc). Where the district court has erroneously admitted evidence, this Court vacates and remands for a new trial unless the beneficiary of the erroneously admitted evidence can show that "it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted." *Id.* at 465 (quotation omitted).

## ARGUMENT

## I. JURISDICTION OVER THIS APPEAL PROPERLY LIES IN THE FEDERAL CIRCUIT

While this Court properly took appellate jurisdiction over Motorola's earlier interlocutory appeal from the district court's pretrial issuance of an anti-suit injunction, *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012), this appeal, unlike the prior appeal, triggers the exclusive jurisdiction of the Federal Circuit. Jurisdiction lies in the Federal Circuit when the "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus.*, 486 U.S. 800, 809 (1988); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1064-65 (2013). A constructive amendment of the complaint can trigger that exclusive jurisdiction. *See Chamberlain Grp., Inc. v. Skylink Tech., Inc.,* 381 F.3d 1178, 1189 (Fed. Cir. 2004) ("For the purposes of determining Federal Circuit jurisdiction, [the court does] not differentiate between actual and constructive amendments [to the complaint]."); *Eli Lilly & Co. v. Aradigm Corp.,* 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004) (finding constructive amendment when neither party objected to the district court adjudicating a joint inventorship claim not effectively pleaded in the complaint). Here the district court's actions after this Court's prior decision constructively amended Microsoft's complaint

18

Specifically, by determining that it could set a RAND rate determined at a bench trial that was for all intents and purposes a patent damages trial (ER131, ER141, ER149), the district court made this case into one requiring the resolution of substantial questions of patent law. The court heard technical testimony concerning the essentiality and value of Motorola's patents, as well as Microsoft's use of them, reflecting infringement and validity analysis (ER922-26, ER932-42) and purported to use a patent infringement damages analysis (ER1483 (citing 35 U.S.C. § 284)), relying on its prior claim construction rulings (ER1047-70) and invalidity findings on the means-plus-function claims in three of Motorola's patents (ER665-692). Where a contract claim necessarily requires a court to "interpret the patents and then determine whether the [product at issue] infringes these patents," then "patent law is a necessary element of [the] breach of contract action." *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000); *see Portney v. CIBA Vision Corp.*, 401 F. App'x 526, 529 (Fed. Cir. 2010) (unpublished) (exercising jurisdiction over an appeal in a breach-of-contract claim where the district court held a claim construction hearing to determine the boundaries of the patents-in-suit in order to determine damages); *Parental Guide of Tex., Inc. v. Thomson, Inc.*, 446 F.3d 1265 (Fed. Cir. 2006) (finding jurisdiction over a declaratory judgment action that required determination of a settlement agreement's definition of "Litigation Royalty" that expressly referenced § 284).

Accordingly, while the Federal Circuit found this Court's jurisdictional analysis at the time of the interlocutory appeal "plausible," *Microsoft Corp.*, 564 F. App'x at 590, this Court should hold that the underpinnings of that ruling no longer apply to the current appeal and transfer the current appeal back to the Federal Circuit.

## II.   THE DISTRICT COURT ERRED IN ISSUING THE RAND ORDER

In deciding to hold a RAND-rate bench trial before the good-faith jury trial, the district court held that it was necessary to determine a "true RAND royalty rate" before the jury could resolve the question of whether Motorola breached its good-faith obligations under its RAND commitments.  ER140, ER179-80.  That premise was erroneous and fatally tainted not only the bench trial but also the jury trial that followed.  Moreover, even if the court did not err in severing the issue of RAND rate for bench trial, the RAND rate it set in its 207-page RAND Order is legally erroneous under governing Federal Circuit law.  The RAND Order thus should be vacated (requiring vacatur of the judgment after jury trial as well).

### A.   The District Court Erred In Severing The RAND-Rate Determination From The Overall Determination Of Good Faith

Microsoft's entire breach case turned on whether Motorola had breached the covenant of good faith and fair dealing implied by its RAND commitments.   Under Washington contract law, that determination involves a fact-intensive, multi-factored analysis by the finder of fact in which no one factor is a prerequisite and no one fact is dispositive over any other.  As the standard Washington practice manual states, "good

20

faith is evaluated by an examination of the circumstances surrounding its application and the context in which it is asserted" and "is an issue for the trier of fact." 25 Wash. Prac., Contract Law & Practice § 5:12 (2013). Good faith under Washington law thus involves the consideration of multiple both objective and subjective factors. *See Cavell v. Hughes*, 629 P.2d 927, 929 (Wash. Ct. App. 1981); *Fairhaven Land & Livestock Co. v. Chuckanut Trails Water Ass'n*, No. 60909-2-I, 2009 WL 429893, at *12 (Wash. Ct. App. Feb. 23, 2009).

The district court failed to cite a single precedent in Washington or any other jurisdiction to support the view that an abstract, advisory "true" price is a prerequisite to a factfinder's determination of good faith concerning a contractual negotiation. Nor is Motorola aware of any authority for that ruling. To the contrary, courts repeatedly *reject* arguments that a party has breached good faith in a contractual negotiation by offering a higher or lower price than is consistent with an abstract "true" price. *See, e.g., Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 Civ. 4914, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998) ("Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with," and any such rule "would turn the normal negotiating process on its head."); *Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.*, No. CV 08-5526-GW, 2010 WL 1525687, at *12 (C.D. Cal. Apr. 12, 2010) (applying California law) ("[A] low offer still qualifies as a good faith offer.");

*BBS Techs., Inc. v. Remington Arms Co.*, No. Civ. A. 05-98-DLB, 2005 WL 3132307, at *4 (E.D. Ky. Nov. 22, 2005) ("[B]ack and forth, low ball high ball negotiations ... are nothing unusual" and "just because one side views another side's settlement offer as unreasonable does not mean that the offer was made in bad faith."). And even the one court that followed the district court here in considering "the royalty rate as compared to selling price" in a SEP licensing dispute did so only as "one relevant factor" in a reasonableness analysis that took into account "the entirety of the terms and circumstances." *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12 03451 RMW, 2012 WL 4845628, at *5 (N.D. Cal. Oct. 12, 2012) (applying California law).

## B. The District Court Erred In Issuing An Advisory Opinion

The RAND Order is thus unjustifiable under Washington law as a necessary prerequisite to determining Motorola's liability for breach, and is no more justified as a prerequisite to any remedy for that breach. Microsoft's complaint sought only declaratory relief and damages for Motorola's supposed breach of its RAND commitments and injunctive relief against Motorola enforcing its SEPs. ER1086-87, ER1106-07, ER1114-15, ER1132. Microsoft's complaint never, even as amended, sought specific performance or a court-ordered license on RAND terms. The district court stated in an order entered May 14, 2012 that Microsoft had "recent[ly]" acknowledged willingness to accept a license on RAND terms. ER1033. But federal complaints may not be amended on the fly through oral representations of a party's

evolving litigation position. And no witness at trial was able to confirm a date by which Microsoft was willing to accept a license on RAND terms. ER271, ER301, ER331. Microsoft's reliance (ER331) upon its prayer for "a judicial accounting of what constitutes a royalty rate in all respects consistent with Motorola's promises" regarding its SEPs (ER1086-87, ER1114-15) is unavailing, for that clause simply requests an advisory opinion on the value of Motorola's patents, not the grant of a RAND license at a court-determined RAND rate.

Accordingly, any determination of a RAND rate as a part of a supposed RAND license remedy in this case is precluded under Article III as an impermissible advisory opinion. *See generally Flast v. Cohen*, 392 U.S. 83 (1968); *Gordon v. United States*, 117 U.S. 697, 702 (1864) (barring federal court judgments that "would not be final and conclusive upon the rights of the parties"). Another district court faced with a similar RAND-related contract dispute over Motorola's SEPs properly dismissed the case as seeking an impermissible advisory opinion where Apple sought to have the court determine a RAND rate but refused to commit to take a license at that rate. *Apple Inc. v. Motorola Mobility, Inc.*, No. 11–cv–178, 2012 WL 5416931, at *1 (W.D. Wis. Nov. 2, 2012) (noting inclination not to "undertake the complex task of determining a FRAND rate if the end result would be simply a suggestion that could be used later as a bargaining chip between the parties"); *Apple Inc. v. Motorola Mobility, Inc.*, No. 11–cv–178, 2012 WL 7989412, at *3 (W.D. Wis. Nov. 8, 2012)

(dismissing case, noting that Apple's requests improperly sought assistance "in negotiating, not in putting the parties' dispute to rest).[4]  Here, where Microsoft never included a request for specific performance or a license in its complaint, the court's determination of a RAND rate was similarly advisory.

Even assuming that Microsoft were deemed to have constructively amended its complaint to seek a license at a RAND rate set by the court,[5] mere establishment of such a rate would still be advisory as to any license remedy.  SEP commitments to SSOs are not simply licenses with missing price terms, like a form lease agreement with a blank for the monthly rental amount.  To the contrary, patent licenses arrived at between sophisticated technology companies through bilateral negotiations— including licenses involving SEPs—are complicated endeavors with myriad variables, including duration, cross-licenses, geographical and product scope, royalty caps, carve-outs, and other material terms apart from royalty rate.  *See Apple Inc v. Motorola, Inc.*, 757 F.3d 1286, 1333 (Fed. Cir. 2014) (Rader, J., dissenting).  For just that reason, the SSO policies concerning the RAND commitments at issue here state

---

[4]  *See also InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-cv-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014) (rejecting a defendant's request for a court to determine a FRAND rate because it "would serve no useful purpose"); *Ericsson Inc. v. D-Link Sys., Inc.*, No. 6:10–CV–473, 2013 WL 4046225, at *21 (E.D. Tex. Aug. 6, 2013) (declining to set a FRAND rate where the implementer did not agree to accept the rate set by the court); *appeal pending,* No. 2013-1625 (Fed. Cir.).

[5]  In that event, there would be additional reason to transfer appellate jurisdiction to the Federal Circuit, *see supra*, Part I.

that "[t]he detailed arrangements arising from patents (licensing, royalties, etc.,) are left to the parties concerned, as these arrangements might differ from case to case." ER1182. The royalty rate resulting from such complex licensing negotiations depends upon the cross-license, duration, scope, cap, and other non-price terms. The district court's treatment of the RAND rate as an independent, exogenous variable was therefore error, and the RAND Order is impermissibly advisory.

### C. The District Court Erred Under Governing Federal Circuit Law In Setting The RAND Rate

Aside from the procedural flaws in the district court's approach, the court erred under governing Federal Circuit patent damages law for setting a reasonable royalty by (1) failing to set a date for the hypothetical negotiation, (2) deriving rates from two patent pool agreements that are not comparable to a hypothetical license, and (3) disregarding benchmark evidence of Motorola's actual, real-world licenses in favor of royalty rates from two pools that did not include Motorola's patents.

### 1. The District Court Erred In Failing To Set A Date For The Hypothetical Negotiation

The Patent Act provides that the court "shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Thus, under federal patent law, the baseline measure of patent damages is a "reasonable royalty" to compensate for

infringing "use." *Id.* The district court purported to follow Federal Circuit patent damages law (ER1480-82), relying upon the "hypothetical negotiation" method of calculating such a royalty (ER1483-85). Such an approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Thus, the "hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Id*. at 1325.

Under this framework, however, "[t]he key element in setting a reasonable royalty after determination of infringement and validity is the necessity for return to the date when the infringement began." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978); *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012). That is because value propositions for the negotiators change over time as the products and market change, and a hypothetical negotiation must take into account a host of relevant factors such as the commercial situation of the parties at a particular point in time, expected revenues, and "established business methods and customs." *Panduit Corp.*, 575 F.2d at 1163. Failure to set a royalty rate based on the date of infringement is reversible error. *See id*. at 1164 (reversing damages award because the analysis did not focus on the time of

infringement and instead relied on after-arising facts); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 869-70 (Fed. Cir. 1993) (reversing court determination of royalty rate for failure to use correct date in hypothetical negotiation).

The district court erred here in purporting to conduct a hypothetical negotiation without setting a date for that negotiation. If the court were deciding a royalty for Motorola's patents, Federal Circuit precedent holds that the relevant date is the time right before Microsoft's first infringement began; if it were setting a rate for comparison to Motorola's offer letters, then the relevant date would be the value on the date Motorola sent the letters. But the court improperly failed to choose either date and appears to have set the value at the time of the bench trial the court issued the RAND Order.

The court's disregard of the relevant date introduced significant error to its analysis. For example, the district court equated Google and Motorola for purposes of its hypothetical-negotiation analysis, constructing its "formula" based upon the assumption that Google would require the same rate as Microsoft because the two are in the same commercial position. ER1617-18, ER1620-21. But Motorola was not owned by Google when it sent the offer letters in October-November 2010; Google did not acquire Motorola *until 2012*. ER1617. It was thus error to use Google as a proxy for Motorola in deriving the supposed RAND rate that Motorola and Microsoft would have agreed to in a hypothetical negotiation.

### 2. The District Court Erred In Using Speculative Inferences From Non-Comparable Pool Rates

The district court erred further in using, as its chief benchmark for the RAND rate the parties would supposedly set in a hypothetical negotiation, the royalty structure of two patent pools[6] involving a subset of industry members—the MPEG-LA pool for video streaming (ER1614) and the Via Licensing pool for WiFi (ER1633). Neither pool includes the Motorola patents at issue here. ER1607, ER1631. While patent pools might in some circumstances provide relevant data for a hypothetical SEP licensing negotiation, the district court failed to identify any basis in the bench trial record for treating the two pools used here as a proper basis for comparison in describing a license that would have resulted from a hypothetical bilateral negotiation between Microsoft and Motorola in 2010. That failure led to several fatal legal errors under Federal Circuit law.

*First*, the Federal Circuit has warned against reliance on licenses that are "radically different" from the hypothetical agreement at issue. *Lucent Techs, Inc.*, 580 F.3d at 1327. The pool arrangements here are "radically different" from a bilateral negotiation between the two parties because these pools assume that all members'

---

[6] A "pool" is an organization "created for the purpose of pooling a group of patents into a single licensing package," and "[w]hile independent licenses are typically priced in bilateral negotiations, the license fee the pool charges for the full package of patents is collectively set by pool members." Anne Layne-Farrar & Josh Lerner, *To Join Or Not To Join: Examining Patent Pool Participation And Rent Sharing Rules*, Int'l J. of Indus. Org. 29, no. 2 (2011) 294, 296.

patents are valued the same, and thus the pool rates do not depend (as would a bilateral negotiation) on the *use* of the patents by the infringer. Moreover, while Microsoft had participated in the MPEG-LA pool, though not the Via pool (ER1599), Motorola chose not to join either (ER1607, ER1631). Thus, the pool rate used by the district court did not include the actual patents at issue.

Moreover, district courts analyzing a reasonable royalty must "exercise vigilance when considering past licenses to technologies other than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010). Microsoft failed to present the necessary evidence to render the patent pools used here comparable. For instance, there was no evidence at the bench trial that Motorola's patents were comparable technically to the patents in the MPEG-LA or Via licensing pools. Nor did Microsoft present evidence to demonstrate the relative value of Motorola's patents to the average (or any) patent in the pool. Thus, there was no basis for the district court to conclude that the MPEG-LA pool would be a "strong" indicator of a royalty rate for a RAND license arrived at in bilateral negotiations between the companies or that the Via licensing pool would be at least a significant indicator. ER1616, ER1633.

*Second*, the district court's formula fails to follow the requirement of the Patent Act that a reasonable royalty *compensate* for infringing *use*—here, for Microsoft's infringement of Motorola's patents. As one of many examples, a critical variable in

29

the formula is the "value to a company of joining a patent pool," which the court labels "VP" (ER1621). The court, however, admitted that it had no evidence as to what VP might be for Motorola. ER1622. Another critical value for the court's formula is "comparison coefficient C," which it describes as a determination as to whether, for a particular company, "joining a patent pool would be substantially more or less valuable than abstaining from it." ER1622. But even though Motorola had chosen in the real world not to participate the pools, the court chose a comparison coefficient C of "1," "assuming that, for Motorola, joining the MPEG-LA patent pool and abstaining from it are roughly equivalent transactions from a monetary perspective." ER1622. Neither VP nor C reflects any actual use Microsoft made of the inventions.

*Third*, even assuming that variables such as "VP" and "comparison coefficient C" were otherwise appropriate, there was no evidence here to assign a value to those variables, forcing the court to engage in speculative inferences and unsupported assumptions in violation of the Federal Circuit's requirement that patent damages models be non-speculative and based on reliable evidence that is not "inconsistent with sound damages jurisprudence." *ResQNet.com, Inc.,* 594 F.3d at 868.[7] For

---

[7] This Court likewise has similarly required non-speculative evidence supporting a royalty rate established through a hypothetical-license negotiation in the copyright infringement context. *See Oracle Corp. v. SAP AG*, No. 12-16944, 2014 WL 4251570, at *5 (9th Cir. Aug. 29, 2014). Such evidence may be in the form of

instance, there was no evidence in the record as to what value *Motorola* would have obtained by having access to the intellectual property in the pool. ER1620. Likewise, the "court heard no testimony whatsoever about how much a company like Motorola would have to pay for the pool's H.264 SEP collection if it abstained from the pool." ER1623. To fill in the blanks in the formula, the district declared that *Google* was a similar company to Microsoft. ER1623. But there was no evidence as to what value Google would have obtained by access to the pool either. Finally, the court "assumed that [its] equation would also hold true for Motorola since Microsoft is a comparable player in the technology industry as to Motorola's parent company Google." ER1623. But the district court ignored that Google acquired Motorola only in 2012 and offered no basis to equate Motorola's market position or incentives in 2010 with those of Google in 2013.

Indeed, the court conceded that it lacked evidence as to how to fill in the basic variables in its formula. For example, the court's equation relies upon "IP" (the value of having access to the IP rights of the pool) and "E" (the external value of adding patents to the pool and promoting adoption of the standard, *e.g.*, by being able to sell additional products) and "OC" (a company's opportunity cost of abstaining from being in the pool and using its patents in a different way). ER1621. But the court

---

pre-suit license offers, *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004), or other prior paid licenses, *Wall Data v. L.A. County Sheriff's Department*, 447 F.3d 769, 786-87 (9th Cir. 2006).

stated that it did not have evidence for Motorola for these variables. ER1622 ("In this case, the court has no evidence demonstrating that Motorola's patents are any more valuable than the average patent in the MPEG LA H.264 pool."). Accordingly, there is a fatal lack of evidence in the record to allow the court to algebraically simplify its complex multivariable equation in order to come up with a supposed "true value" of Motorola's patent portfolio.

### 3. The District Court Erred In Ignoring Motorola's Historical Licenses

The court compounded these errors by setting aside as irrelevant actual licenses that Motorola had historically entered into for its SEPs, reasoning that they had arisen from litigation settlements. ER1583-84, ER1589, ER1592-93. Under patent damages law, "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace." *LaserDynamics, Inc.,* 694 F.3d at 79; *see ResQNet.com, Inc.*, 594 F.3d at 869-72; *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002). Contrary to the district court's reasoning, litigation settlements can be "the most reliable license" to evaluate and should be considered as part of any damages analysis. *ResQNet.com, Inc.*, 594 F.3d at 872 ("This court observes as well that the most reliable license in this record arose out of litigation.").

Indeed, in a case involving Apple's infringement of one of Motorola's cell phone patents, the Federal Circuit recognized the industry practice of broad cross-licensing of entire portfolios, and acknowledged Motorola's expert testimony that Motorola's cross-licenses "show that Motorola has previously received a royalty rate of approximately 2.25% for a license to its entire SEP portfolio." *Apple Inc.*, 757 F.3d at 1323. The Federal Circuit held that the district court's exclusion of such testimony was error because the expert there "construct[ed] a cost estimate typically relied upon when calculating patent damages—the cost to license the technology." *Id.* at 1325. "This approach is generally reliable because the royalty that a similarly-situated party pays inherently accounts for market conditions at the time of the hypothetical negotiation." *Id.* at 1326. The Federal Circuit noted that "Apple's royalties under these agreements were in a similar range." *Id.* at 1323. Moreover, "[t]hese licenses also typically included cross-license agreements," *id.*, a factor the district court here explicitly refused to consider (ER1457).

For all these reasons, the RAND Order is erroneous and the judgment should be reversed or at a minimum vacated because fatally tainted by it (*see infra* Part IV.A).

## III. MOTOROLA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BREACH OF THE IMPLIED DUTY OF GOOD FAITH

Whether or not the RAND order is vacated, this Court should reverse and direct entry of judgment for Motorola on contract breach and damages. Motorola cannot have breached its duty of good faith by its mere opening offers and protected conduct

33

in seeking injunctive relief, and even if it did, Microsoft is not entitled to attorneys' fees or relocation costs as damages. At the very least, the court's instructional errors on good faith warrant vacatur and remand for new trial.

### A. No Reasonable Jury Could Find Breach Of Good Faith

The district court erred under Washington law in instructing the jury on good faith, but whether or not those instructions were erroneous, the record was insufficient to support a reasonable jury's finding of liability.

#### 1. The District Court Erroneously Instructed The Jury On Good Faith

Under Washington contract law, whether a contract party has breached the implied covenant of good faith and fair dealing requires a factfinder to consider the entire "context" and "circumstances" of the dealings between the parties. 25 Wash. Prac., Contract Law & Prac. § 5:12. The good-faith inquiry includes both subjective and objective factors, *see Fairhaven Land*, 2009 WL 429893, at *12 ("Circumstances showing breach of the duty of good faith include, evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."); *cf. DV Realty Advisors LLC v. Policemen's Annuity and Benefit Fund of Chi., Ill.,* 75 A.3d 101, 110 (Del. 2013) (noting the importance of "defin[ing] the characteristic of good faith by its opposite characteristic—bad faith"); *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (holding that "good

faith" turns not only on "reasonableness" but also on "bad motive or intention"). The good-faith inquiry also looks to industry custom or practice. *See, e.g., Curtis v. N. Life Ins. Co.*, No. 61372-3-I, 2008 WL 4927365, at *6 (Wash. Ct. App. Nov. 17, 2008); *Axthelm & Swett Constr., Inc. v. Caudill*, No. 35995-9-I, 1997 WL 241575, at *4 (Wash. Ct. App. May 12, 1997) (basing good-faith finding on "compliance with industry standards").

The district court erred in instructing the jury on this body of law. *First*, it erroneously instructed the jury that it "may consider" an enumerated set of various factors[8] "***alone or in combination***" (ER65) (emphasis added) to determine whether Motorola had breached its duty of good faith. By instructing that ***any one factor*** underlying the duty of good faith might be dispositive of breach, the court in effect shifted the burden to Motorola to ***disprove*** each and every factor individually. But Washington law requires a jury to consider ***all*** factors bearing on good faith, giving such weight to each as the jury finds appropriate in the context and circumstances. *See* 25 Wash. Prac., Contract Law § 5:12 ("[G]ood faith is evaluated by an examination of the circumstances surrounding its application and the context in which it is asserted."); *Realtek Semiconductor Corp.*, 2012 WL 4845628, at *4 (California

_____

[8] The factors the court listed were: (i) the reasonable and justified expectations of the parties; whether Motorola's conduct (ii) would frustrate the purpose of the contract, (iii) was commercially reasonable, or (iv) conformed with industry custom or practice; (v) whether Motorola exercised any contractual discretion reasonably; (vi) subjective factors such as Motorola's intent. ER65.

law) (in assessing the duty of good faith, "reasonableness turns on the entirety of the terms and circumstances").

*Second*, the court compounded that error by instructing the jury that consideration of subjective factors was optional:  "***If you consider subjective factors*** such as Motorola's intent or motive, you must be aware that this is only one consideration and it need not dictate your final decision."  ER65 (emphasis added). That language improperly suggested to the jury that subjective factors are less important than the other factors, and together with the "alone or in combination" instruction, erroneously suggested that each of the enumerated factors alone might be dispositive ***except*** subjective intent.  Washington law suggests to the contrary that subjective evidence of good or bad faith may be dispositive and thus should have been considered on par with the remaining factors.  *See Fairhaven Land*, 2009 WL 429893 at *l2;  *Cavell*, 629 P.2d at 929 (finding bad faith where party had the "*specific purpose* of frustrating [a] sale") (emphasis added); *Matter of Hollingsworth's Estate*, 560 P.2d 348, 352 (Wash. 1977) (finding bad faith where a party "later decided *he had made a bad bargain*") (emphasis added).  The instructions thus virtually directed the jury to discount Motorola's unrebutted subjective evidence that it had acted in good faith by making its standard initial offer in response to Microsoft's invitation to put its patents "on the table." ER285-86.

*Third*, the district court erred in instructing the jury that, "in some circumstances, it may be a breach of the duty of good faith and fair dealing for a standards-essential patentholder to seek injunctive relief against a standards-essential patent implementer." ER71. As the district court acknowledged (ER565), nothing in Motorola's RAND commitments to the IEEE and ITU categorically bars it from seeking injunctive relief, *see Apple, Inc. v. Motorola Mobility, Inc.*, 11-cv-178, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012) (finding same as to ETSI commitment). But because the district court nowhere specified the "circumstances" in which requests for injunctive relief from patent infringement might breach good faith, the instruction improperly invited the jury to find that *any* such request might do so.

### 2. The Evidence Is Legally Insufficient To Support A Finding Of Breach Of Good Faith

Even if the court's instructions were not in error, and any one of the district court's enumerated factors alone could suffice, the record fails to contain legally sufficient evidence that Motorola breached a duty of good faith through its initial opening offers or requests for injunctive relief.

### (a) Motorola's Opening Offer Letters

*Reasonable Expectations.* The unrebutted evidence shows that Motorola made its standard opening offer to Microsoft in order to begin a negotiation (ER257, ER285, ER372, ER470, ER1320, ER1375), and that Microsoft does not accept the opening offer "99 percent of the time." ER353-54. Motorola indicated that it was open to

licensing only part of its portfolio (ER11136, ER1158, ER269, ER286) and Microsoft itself has included a 20-day limit in its offer letters (ER286-87).

*Frustration of Purpose*.  Even assuming that the purpose of the RAND commitment is to prevent hold-up, Microsoft's expert could not opine on whether Motorola's opening offers intended to hold up Microsoft, given that Microsoft was infringing Motorola's patents and continued its unlicensed use.  ER40.

*Commercial Reasonableness*.  As the district court held, an opening offer from an SEP holder does not need to be on RAND terms.  ER178-79.  "A low offer still qualifies as a good faith offer," *Alliance Atlantis*, 2010 WL 1525687, at *12 (noting that, in a commercial transaction, "both sides presumably try to get the best deal"), and conversely, the same is true of a high offer.  Moreover, a rate is only one term in a complex negotiation in which other terms (such as cross-licenses, scope definitions and volume-based caps) can make any given rate more or less RAND. Thus, the opening rate set forth in Motorola's letters, in the abstract, cannot be commercially unreasonable as a matter of law.  Nor can it become so through comparison with the *ex post* court-determined rates in the RAND order, for there is no basis in the record here to suppose that Motorola knew or should have known in October-November 2010 of the court's April 2013 findings or the evidence on which they were based.

*Industry Custom and Practice*.  The unrebutted evidence of industry custom and practice suggests that parties determine patent license terms through private

38

bilateral negotiations in which offers are met with counteroffers. ER303, ER313, ER319, ER335, ER433, ER469. This practice applies to SEPs. ER283-86, ER313, ER335-36, ER350. Indeed, the very RAND commitments at issue contemplate such negotiations. ER472-73. Microsoft admitted that its failure to make a counteroffer departed from standard (and its own) practice. ER353-54.

***Subjective Good Faith***. The unrebutted evidence shows that Motorola executive Kirk Dailey acted with subjective good faith in sending the letter, expecting to engage in negotiations with Microsoft. ER266, ER287.[9]

For all the above reasons, no reasonable jury could find breach of good faith on the record below.

### (b)    Injunctive Relief

Similarly, the record fails to support any reasonable conclusion that Motorola acted in bad faith by seeking injunctive relief. As the district court acknowledged (ER571-72), the RAND commitments at issue do not contractually bar SEP holders from seeking injunctive relief, and the undisputed evidence at trial showed that Microsoft sued Motorola *three times* before Motorola began to seek injunctive relief against Microsoft. Indeed, in its October 1 patent infringement suits, Microsoft sought an exclusion order against Motorola's Android phones in the ITC and an

---

[9]    The district court's fifth enumerated factor, involving discretion over a contractual term, is irrelevant in this case.

39

injunction in the district court. ER1324-32; ER281. On this record, Motorola's actions seeking injunctive relief for Microsoft's continued unlicensed use of its patents cannot plausibly be found to violate the reasonable expectations of the parties, to be commercially unreasonable, to depart from industry custom and practice, or to evince subjective bad faith.

Nor, in the circumstances of this case, could a reasonable jury find that Motorola sought injunctions in order to frustrate the purpose of its RAND commitments, even assuming, as the district court found in its RAND order, that the purpose of those commitments is to prevent patent hold-up. As Microsoft's own witness David Heiner admitted, "litigation where the parties disagree whether proffered licensing terms were consistent with relevant patent licensing commitment such as RAND" should not be considered hold-up (ER435-36, ER1300, ER1305), and while a SEP holder does not always assert its SEPs, "if that firm then gets sued by somebody, they might then counter-sue with those patents" (ER436).

### B. Motorola Was Entitled To Judgment As A Matter Of Law On Damages

The $14.52 million damages judgment consists of $11.49 million in damages for Microsoft's costs to relocate its the German distribution facility to the Netherlands after Motorola sought to enjoin xBox sales in Germany and $3.03 million in attorneys' fees Microsoft incurred as a result of Motorola's "conduct in seeking injunctive relief." ER44-46. That judgment rests impermissibly on damages resulting from

Motorola's litigation conduct, which is protected from liability by the *Noerr-Pennington* doctrine. And the $3.03 million award is independently invalid because Washington law does not allow attorneys' fees as damages.

### 1. The *Noerr-Pennington* Doctrine Bars Damages Arising From Protected Litigation Conduct

The damages awarded by the jury arise exclusively from Microsoft's costs incurred in response to Motorola's requests for injunctive relief to enforce its patents in the district courts, the ITC, and in German courts. ER44-46, ER415-19, ER455, ER459. But, as a matter of law, Motorola's pursuit of its patent infringement claims is protected petitioning activity immune from liability under the *Noerr-Pennington* doctrine, which derives from the First Amendment right to petition. U.S. Const. amend. I; *see White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000); *Kottle v. Nw. Kidney Ctrs.,* 146 F.3d 1056, 1059 (9th Cir. 1998). While the doctrine originated to provide antitrust immunity, *see Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993), it has since "been expanded beyond its original antitrust context," *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). This Court has also applied it to state-law claims. *Id.* (tortious interference with prospective economic advantage). While this Court has not specifically addressed its application to suits filed in foreign countries, both the Fifth Circuit and district courts in this Circuit have applied it to foreign suits. *See Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th Cir. 1983); *Luxpro Corp. v. Apple*

41

*Inc.*, No. C 10-03058 JSW, 2011 WL 1086027, at *5 (N.D. Cal. Mar. 24, 2011). Further, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr–Pennington* doctrine." *Theme Promotions, Inc.*, 546 F.3d at 1007 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936-38 (9th Cir. 2006)).

Nor did Motorola's RAND commitments waive its right to seek injunctive relief. Motorola has a statutory right to seek injunctive relief, 35 U.S.C. § 283, and exclusion orders in the ITC, 19 U.S.C. § 1337. Nothing in Motorola's letter of assurance to the SSOs or in SSO policy statements waives those rights, as the Federal Circuit recently confirmed, *see Apple, Inc.*, 757 F.3d at 1331 ("To the extent that the district court applied a per se rule that injunctions are unavailable for SEPs, it erred."); *see also Apple, Inc.*, 2012 WL 5416941, at *15 (finding no contractual waiver).

The damages awarded Microsoft thus directly implicate the *Noerr-Pennington* doctrine, and the damages awarded should be vacated as penalizing Motorola's protected litigation conduct.[10]

---

[10] Since *Noerr-Pennington* protects all litigation activity that is not objectively baseless, it would be especially improper to apply permit damages resulting from the German lawsuit in which Motorola prevailed in obtaining injunctive relief. ER442; *see Microsoft Corp.*, 696 F.3d at 889. Further, as this Court explained, even with the district court's anti-suit injunction in place, "Motorola [remained] free to continue litigating its German patent claims against Microsoft as to damages or other non-injunctive remedies to which it may be entitled." *Microsoft Corp.*, 696 F.3d at 889.

## 2. Washington Law Bars Recovery Of Attorneys' Fees As Damages In A Breach Of Contract Case

The district court also committed legal error under settled Washington law in permitting Microsoft to recover $3.03 million in attorneys' fees as damages for its breach of contract claim. ER46. "Washington courts traditionally follow the American rule in not awarding attorney fees as costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*, 931 P.2d 156, 160 (Wash. 1997); *Walter Implement, Inc. v. Focht*, 730 P.2d 1340, 1344 (Wash. 1987) (en banc) (same). The purpose of the American rule is to "avoid penalizing a party for merely defending or prosecuting a lawsuit." *Rohm & Hass Co. v. Crystal Chem. Co.*, 736 F.2d 688, 690 (Fed. Cir. 1984) (quotation omitted). Every state except Alaska follows the American rule. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 972 (9th Cir. 2013). Nor are attorneys' fees generally available in patent cases; pursuant to 35 U.S.C. § 285, they are available only in "exceptional cases."

Further, "[b]ecause virtually all litigation compels a party's opponent to litigate, Washington courts have narrowly limited the type of actions where attorney fees are awarded as damages." *McCready*, 931 P.2d at 162 (citing examples); *see also Stephen Haskell Law Offices, PLLC*, No. CV–10–437, 2011 WL 1303376, at *6 (E.D. Wash. Apr. 5, 2011) ("This is a breach of contract action, and [plaintiff] would not be entitled to attorney's fees under the 'American rule' absent some statutory, contractual, or other specified basis."). The Washington Supreme Court has

43

recognized limited equitable exceptions permitting attorneys' fees as damages: equitable indemnity (covering actions by a third person subjecting a party to litigation) and dissolving a wrongfully issued temporary injunctions or restraining orders. *McCready*, 931 P.2d at 160.

In denying Motorola JMOL on attorneys' fee damages (ER37-39), the district court predicted that Washington would adopt a new exception to the American rule never before recognized under Washington (or any other) law. The district court ruled that the RAND commitment was akin to a covenant not to sue for an injunction (ER577). That ruling lacked any legal or factual justification. *First*, as the district court recognized (ER577), Washington law has never recognized an exception to the American rule for violation of a covenant not to sue. Nothing indicates that the Washington courts would recognize the district court's newly-created exception. This Court has addressed that very question under Oregon law, and has specifically *rejected* an exception under Oregon law for attorneys' fees for breach of covenant not to sue, predicting that the Oregon courts would not accept it. *Gruver v. Midas Int'l Corp.*, 925 F.2d 280, 283-84 (9th Cir. 1991). Similarly, as the *en banc* Colorado Supreme Court concluded, "after reviewing [this] issue in depth" (ER577), "*most jurisdictions* have applied the American rule *barring* the award of attorney fees and costs to cases involving a breach of a [covenant not to sue]." *Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo. 1990) (emphases added).

*Second*, the RAND commitment is not a covenant not to sue for an injunction. As discussed above, a SEP holder retains its statutory right to seek an injunction notwithstanding its RAND commitment—as the district court itself conceded is the case under certain circumstances (ER565-66). The Federal Circuit recently agreed. *Apple Inc.*, 757 F.3d at 1331.

Absent any legal or factual basis for its ruling construing the RAND commitment as a covenant not sue and permitting attorneys' fees as damages for breach of the commitment, the judgment for $3.03 million in attorneys' fees should be reversed.

### 3. Damages Are A Necessary Element Of Microsoft's Contract Claim

Microsoft's failure to adduce legally permissible or sufficient evidence from which a jury could conclude that Motorola's actions caused Microsoft to incur damages means that Microsoft cannot prove an essential element of its breach-of-contract claim, and therefore that judgment should be entered for Motorola. Under Washington law, a "breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Ind. Forest v. Dept. of Labor & Indus.*, 899 P.2d 6, 9 (Wash. 1995); *Muniz v. Microsoft Corp.*, No. C10-0717-JCC, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010). Damages are an essential element of breach of contract and must be proven. *See Microsoft Corp. v. Immersion Corp.*, No. C07-936RSM, 2008 WL

2998238, at *3 (W.D. Wash. Aug. 1, 2008) ("It is well established that in any breach of contract claim, the aggrieved party must prove damages.") (citation omitted). Further, a party may not rely on nominal damages to sustain a breach of contract claim if the claim is for damages only. *See DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 553 (Wash. Ct. App. 2014) ("Mere proof that there was a breach of contract without more will not support a verdict in favor of a plaintiff, even for nominal damages."), *citing Ketchum v. Albertson Bulb Gardens, Inc.*, 252 P. 523, 525 (Wash. 1927); *see also* 25 Wash. Prac., Contract Law & Practice § 14:2 (2013) (acknowledging "authority for the principle that dismissal of a claim is appropriate unless the plaintiff is able to prove that some damage resulted from the breach").

Microsoft's original and amended complaints seek damages and otherwise only declaratory and injunctive relief related to its contract claim. ER1132 (seeking "damages that Microsoft proves at trial" and otherwise declaratory requests for relief); ER1106-07 (same). Accordingly, the district court erred in permitting the contract claim to go forward on the basis that Microsoft could recover nominal damages if the jury found liability. *See Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, No. Civ.A. 02-243(JLL), 2006 WL 20521, at *9 (D. N.J. Jan. 3, 2006) (precluding nominal damages when defendants alleged only actual and consequential damages). *Cf. Apple Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 909 (N.D. Ill. 2012), *aff'd in part and rev'd in part*, 757 F.3d 1286 (Fed. Cir. 2014). Without sufficient evidence for the jury

46

to find that Motorola proximately caused Microsoft damages, Microsoft failed to prove an essential element of its claim for breach of contract, and this Court should reverse and direct entry of judgment in favor of Motorola.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN KEY EVIDENTIARY RULINGS

Even if the judgment is not reversed, it should be vacated and the case remanded for new trial because the district court erred in permitting (a) introduction of its own findings in the RAND Order and (b) certain evidence of an FTC order and decision concerning Motorola's SEPs. Evidence is relevant only if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence that is not relevant is not admissible and should be excluded at trial. Fed. R. Evid. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Introduction of settlements or settlement offers is prohibited when offered "to prove … the validity … of a disputed claim " Fed. R. Evid. 408.

The district court violated those basic rules (a) in ordering its own RAND findings admissible through witness testimony at trial—including not only the final RAND rate and range but also all the court's underlying findings (ER100-10)—and (b) in allowing Microsoft to elicit highly prejudicial testimony on the FTC order.

## A.     The RAND Order Findings Were Inadmissible

Even if the district court's issuance of the RAND Order were not otherwise reversible error (which it was, *see supra* Part II), admission of the RAND Order findings as conclusive evidence at the jury trial was prejudicial error under Rules 401 and 403.

### 1.     The RAND Order Findings Lacked Relevance

Under Washington contract law, whether a party acts in good faith must be judged by the facts at the time of the alleged breach.  *See, e.g.*, *Gaglidari v. Denny's Restaurants, Inc.*, 815 P.2d 1362, 1369 (Wash. 1991) (en banc) (explaining that the relevant inquiry "is whether at the time plaintiff was dismissed defendant reasonably, in good faith, and based on substantial evidence believed plaintiff had [engaged in prohibited activity]"); *see also Gaylord v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 2d 1101, 1124 (E.D. Cal. Mar. 4, 2011) (holding that, under California law, "[t]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that the decisions were made," and not in the light of subsequent events") (quotation omitted); *Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 511 (D.N.J. 2009) (finding no "bad motive or intention that is essential to a cause of action for breach of the covenant of good faith and fair dealing" when party

did not have relevant information at the time of the alleged breach) (quotation omitted).[11]

This basic rule renders the RAND Order irrelevant to the jury's determination of Motorola's good faith. The conclusions the court reached in April 2013 after an 18-witness bench trial in November 2012 were obviously unavailable to Motorola when it sent its October 2010 offer letters and filed its November 2010 patent actions. The *ex post* introduction of unknowable facts (including facts obtained through discovery that were available only to Microsoft or third parties, not Motorola, at the time of the alleged breach) and findings based on those facts distorts the evidence relevant to Motorola's conduct at and around the time of its initial offers.

Admission of the RAND Order findings before the jury also introduced improper hindsight bias to the extent those findings incorporated the court's rulings in Motorola's patent case. For example, at the time of the RAND trial, the district court had already conducted claim construction rulings and invalidated several Motorola patent claims. ER665-92, ER1047-70. The court incorporated those findings in the RAND Order. *See, e.g.*, ER1504-16. But Motorola was entitled under federal patent law to treat its SEPs as ***valid*** when it sent its offers and filed its infringement actions. 35 U.S.C. § 282 ("[a] patent shall be presumed valid").

---

[11]   Federal Circuit patent damages law likewise evaluates the value of a patent for purposes of reasonable-royalty damages at the time of the alleged infringement. *See supra* Part II.C.

In addition, the court-determined RAND rate and range was legally irrelevant to assessing the reasonableness of Motorola's *opening offer letters* because an initial offer need not be on RAND terms, as the court itself acknowledged (ER178-79). The RAND Order did not establish a reasonable *opening* offer rate and range, but instead purported to set a *final* RAND rate and range—one that would be arrived at after all negotiations. Such a final rate provides no assistance to the jury in determining if Motorola's opening offers were reasonable and prejudiced Motorola to the extent the jury might have inferred that the ultimate negotiated rate (unknown to Motorola at the time it made its offer) could have influenced Motorola's opening offer. The court's RAND rate is also not relevant to breach because there is no indication that the patents were valued as of the date Motorola sent the offers; the reasoning in the RAND Order suggests that the court determined the RAND rate as of the date of the RAND Order (April 2013) and not as of the date of the offer letters (October-November 2010).

## 2. The RAND Order Findings Were Prejudicial

No question can exist that the district court's admission of its RAND rate determination tainted the jury's verdict by enabling Microsoft to tar Motorola's opening offer as "blatantly unreasonable" in comparison. The district court permitted the use of the RAND Order to undermine testimony from Motorola witnesses that the prior licenses with royalties set at a rate up to 2.25% were potential indicators of a RAND license; in fact, the district court instructed the jury that it had "held that [one

such prior] license could not be used as an indicator as to what is an appropriate RAND royalty rate for Motorola's 802.11 and H.264 patent portfolios in its negotiations with Microsoft." ER257. And Motorola's witnesses were not permitted to contradict the findings in the RAND Order. *See, e.g.*, ER266.

Moreover, the admission of the RAND Order findings as the conclusive determinations *of the court* carried an extra imprimatur of authority, creating the obvious danger that the jury would give them undue weight. Microsoft relied heavily on the fact that "the court found" the RAND rate for the SEPs at issue. *See, e.g.*, ER380. As this Court has held, "judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *United States v. Sine*, 493 F.3d 1021, 1034 (9th Cir. 2007) (quotation omitted).

### 3. Motorola Did Not Waive Objection To Admission Of The RAND Order Findings

In denying Motorola's motion to exclude the RAND Order findings from admission in evidence before the jury (ER100-10, ER111-28, ER630-55), the district court concluded that Motorola had waived any such objection by agreeing to a bench trial on the RAND rate. ER103, ER105. That decision is in error; there was no such waiver. Motorola *opposed* the district court's improper decision to sever the RAND rate from the overall good-faith determination and hold a bench trial on that single issue prior to jury trial. ER989-1017.

Nor did Motorola even conceivably consent to the admission of the court's findings *other than* the supposed RAND rate/range. Under the Seventh Amendment, a prior bench trial cannot determine common issues at law as to which a party has not waived its right to a jury trial. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) ("Since the right to jury trial is a constitutional one . . . discretion [in determining the order of causes to be tried first] is very narrowly limited and must, wherever possible, be exercised to preserve jury trial."); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 (1962) ("*Beacon Theatres* requires that any legal issues for which a trial by jury is timely and properly demanded by submitted to a jury."); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170-171 (9th Cir. 1989) (citing *Beacon Theatres*). Accordingly, jury waivers are to be construed narrowly, and Federal Rule of Civil Procedure 38(c) specifically provides that, where a party has not specified the issues to be tried by jury, "it is considered to have demanded a jury trial on all issues so triable."

The bench trial was held to determine only two discrete issues, as described by the Court: a royalty range and a specific RAND royalty point. ER152-53. And yet the district court repeatedly allowed Microsoft to introduce as "undisputed facts" a long litany of findings by the district court on issues other than RAND rate and range, and to use those findings to elicit highly prejudicial testimony from its witnesses to suggest Motorola had acted in bad faith. ER384 (allowing Microsoft's expert to

testify that, based on the "undisputed facts" found by the district court concerning the number of companies contributing to and holding patents essential to the H.264 standard, it follows that "something like a 2.25 percent royalty on the laptop value is just way out of line…given that there are so many other people just within that H.264 standard"); ER384 (allowing Microsoft's expert to testify that, based on the "undisputed facts" found by the district court that Motorola's H.264 standards-essential patent portfolio "built upon already existing technology," "only constitutes a sliver of the overall technology incorporated in the H.264 standard," and is "only of minor importance to the overall functionality of Microsoft's Windows product…[and] Xbox product," it follows that " there is going to be a large gap between the hold-up value, which would be the value of the standard, and the value of Motorola's contribution, because all of these facts are telling us they are just a small part, of minor importance, a sliver of the value"); ER385 (similar with respect to Motorola's 802.11 patent portfolio). The district court denied Motorola the right to question any of these findings, reinforcing their prejudicial impact. ER109. Nothing in any supposed jury waiver extends to these non-RAND rate/range findings.

The prejudicial admission of the district court's RAND Order findings thus, at a minimum, warrants new trial.

53

### B.     The FTC Order Concerning Motorola's SEPs Was Inadmissible

The district court also abused its discretion in permitting Microsoft to introduce before the jury evidence of an FTC decision and order concerning Motorola's RAND licensing practices—despite Motorola's objections, multiple side bars, and supposedly curative instructions that failed to cure the problem and simply called more attention to the error of allowing any FTC testimony in the first place. This highly prejudicial evidence, which Microsoft used repeatedly to insinuate that Motorola had been found by a government agency to have abused its RAND commitments, independently requires vacatur and remand for a new trial.

On July 23, 2013, the FTC and Motorola (by then owned by Google) settled an investigation into Motorola's SEP enforcement practices, including seeking injunctions for patent infringement. ER588. The FTC never conducted any fact-finding, and the Decision and Order setting forth the settlement between Google and Motorola and FTC counsel expressly notes that it "is for settlement purposes only and does not constitute an admission by Respondents that the law has been violated as alleged in such Complaint or that the facts as alleged in [the FTC's draft] Complaint, other than jurisdictional facts, are true." ER588.

Nonetheless, Microsoft introduced at trial—over Motorola's objection (ER425, ER429)—evidence of the FTC investigation and order (ER429-30). Microsoft's witness Mr. Heiner testified that Microsoft had complained to the FTC under the

antitrust laws about Motorola's conduct and that the FTC had opened an investigation (ER428); that the FTC had investigated Motorola for RAND violations, resulting in a settlement with Motorola (ER429); and that the FTC had "concluded" that Motorola had "reneged" (ER429-30). Motorola immediately moved for a mistrial. ER430. The motion was denied. ER437 (explaining that the witness testified "that the agency had concluded that Motorola had reneged. There is no statement as to what they reneged on"). In closing argument, Microsoft called attention to the FTC investigation, telling the jury in reply (thereby preventing Motorola's chance to rebut) that the FTC had "grave concern" about Motorola's conduct and that Motorola "knew that the FTC believed that its conduct amounted to reneging on its RAND commitment." ER542.

Admission of such testimony was inadmissibly prejudicial under Rule 403 and improper under Rule 408. Mr. Heiner's testimony clearly implied that the FTC had found that Motorola had "reneged" on its RAND obligations, inviting the jury to find breach based upon an administrative investigation in which there were no findings and there was no admission of wrongdoing. ER542. The obvious prejudice to Motorola clearly outweighed any probative value from discussion of the FTC settlement. Settlements in administrative actions are not admissions of wrongdoing. *See Gribben v. United Parcel Service, Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008) (affirming exclusion of consent decree with "no-fault settlement"); *Kramas v. Sec. Gas & Oil*

*Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (affirming decision to exclude SEC consent decree where the decree "involved no finding of culpability and no judgment of wrongdoing"). Admission of testimony about the Decision and the Order posed the obvious risk of confusing the jury as to whether Motorola had been adjudged in violation of its RAND commitments. The potential for confusion is underscored by the fact that the FTC itself gave conflicting pronouncements on its own decision's meaning. *See* ER626 (written statement correcting earlier suggestion that "the Order requires Google to immediately withdraw all pending legal claims that seek injunctive relief," and clarifying that "[i]t does not").

Further, the admission of the FTC order independently violated Federal Rule of Evidence 408 because Microsoft attempted to use Motorola's SEP settlement with the FTC to prove that Motorola had breached its contractual obligation to license its SEPs on RAND terms. Rule 408 prohibits the use of civil consent decrees executed with government agencies to prove liability in a private action. *See, e.g., New Jersey Tpk. Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 473 (D.N.J. 1998), *aff'd*, 197 F.3d 96 (3d Cir. 1999) ("Courts agree that Rule 408 applies to civil consent decrees executed with government agencies . . . Here, there is no question that [defendant] entered into the 1990 [consent decree] in order to compromise a disputed claim; accordingly, Fed. R. Evid. 408 bars reliance upon it as evidence of liability."). In this case, Motorola's settlement of the FTC investigation, along with evidence of its statements and conduct

in cooperating with the FTC, were protected under Rule 408. Microsoft introduced the FTC settlement—regarding Motorola's compliance with its RAND obligation—to show that Motorola breached its RAND obligations. The district court abused its discretion in allowing the admission of such evidence.

Thus, if the judgment is not reversed, it should be vacated and remanded for evidentiary abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment should be reversed and entry of judgment ordered for Motorola. In the alternative, the judgment should be vacated and the case remanded for new trial.

DATED: New York, New York
       September 15, 2014

QUINN EMANUEL URQUHART &
  SULLIVAN, LLP


By: s/ Kathleen M. Sullivan
    Kathleen M. Sullivan
    Ellyde R. Thompson
    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
    51 Madison Avenue, 22nd Floor
    New York, NY 10010-1601
    (212) 849-7000

    Brian C. Cannon
    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5000

## REQUEST FOR ORAL ARGUMENT

Defendants-Appellants respectfully request that this Court hear oral argument in this case.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Defendants-Appellants state that they are not aware of any related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE WITH
## FRAP 32(A)(7)(C) & CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 13,786 words.

s/ Kathleen M. Sullivan
*Attorney for Defendants-Appellants*

September 15, 2014

## CERTIFICATE OF SERVICE

I, Kathleen M. Sullivan, a member of the Bar of this Court, hereby certify that on September 15, 2014, I electronically filed the foregoing "Opening Brief of Defendants-Appellants" with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that I caused one copy of Defendants-Appellants Excerpts of Record to be served by third-party carrier, FedEx, for overnight delivery to the following counsel for Plaintiff-Appellee:

Carter G. Phillips

Arthur W. Harrigan, Jr.


s/ Kathleen M. Sullivan