# No. 14-35393

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

————— ▸▸◂◂ —————

MICROSOFT CORPORATION, a Washington Corporation

*Plaintiff-Appellee*,

v.

MOTOROLA, INC., MOTOROLA MOBILITY, INC., and GENERAL
INSTRUMENT CORPORATION

*Defendants-Appellants*.

—————————————

*On Appeal From The United States District Court
For The Western District Of Washington At Seattle*

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

Brian C. Cannon
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Kathleen M. Sullivan
Ellyde R. Thompson
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue
22nd Floor
New York, NY  10010
(212) 849-7000

**SUPPLEMENTAL CORPORATE DISCLOSURE**
**STATEMENT PURSUANT TO RULE 26.1**

Pursuant to Fed. R. App. P. 26.1, Motorola Mobility LLC (f/k/a Motorola Mobility, Inc.) states that at the outset of this appeal it was a wholly owned subsidiary of Google Inc., a publicly held company. During the course of the appeal, Motorola Mobility LLC was sold to Lenovo Group Ltd. However, the patents at issue now are owned by a subsidiary of Google Inc., Google Technology Holdings LLC. The patents in suit formerly owned by General Instrument Corp. also now belong to Google Technology Holdings LLC.

# TABLE OF CONTENTS

**Page**

SUPPLEMENTAL CORPORATE DISCLOSURE  STATEMENT
PURSUANT TO RULE 26.1 ............................................................... ii

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................3

I.      MICROSOFT FAILS TO SHOW THAT JURISDICTION
        PROPERLY LIES IN THIS COURT.............................................3

II.     MICROSOFT OFFERS NO JUSTIFICATION FOR THE DISTRICT
        COURT'S ERRORS IN SETTING A RAND RATE....................4

        A.      Microsoft Fails To Defend The District Court's Bifurcation Of
                The Case ........................................................................5

                1.      Microsoft Cites No Legal Support For Separately
                        Determining A "True" RAND Rate............................5

                2.      Microsoft Cannot Show That Motorola Consented To
                        The District Court's Bifurcation .................................7

        B.      Microsoft Cannot Justify The District Court's Issuance Of An
                Advisory Opinion ...............................................................10

        C.      Microsoft Cannot Defend The District Court's Erroneous
                RAND Ruling......................................................................11

                1.      Microsoft Offers No Support For The District Court's
                        Defiance Of  Federal Circuit Patent Damages Law.................11

                2.      Microsoft Fails To Justify The District Court's Erroneous
                        RAND Rate .............................................................12

III.    MICROSOFT FAILS TO SHOW LEGALLY SUFFICIENT
        EVIDENCE TO SUPPORT THE DAMAGES AWARD AGAINST
        MOTOROLA FOR BREACH OF THE DUTY OF GOOD FAITH............15

A.  Microsoft Cannot Now Rely Upon Any Supposed Direct Breach Of The RAND Commitment ................................................... 15

B.  Microsoft Fails To Show That A Properly Instructed Jury Could Find Motorola's Breach Of Good Faith .............................................. 16

　　1.  Microsoft's Arguments Cannot Cure The District Court's Erroneous Instructions On Good Faith ..................................... 16

　　2.  Microsoft Errs In Arguing That Motorola's Opening Offers And Requests For Injunctive Relief Amount To Breach Of Good Faith ............................................................... 17

C.  Microsoft Fails To Show That It Established Cognizable Damages ........................................................................................... 20

　　1.  Microsoft Does Not Counter The *Noerr-Pennington* Bar To *Damages* Arising From Protected Litigation Conduct ........ 20

　　2.  Microsoft Cannot Justify The District Court's Creation Of A New Exception To The American Rule On Attorney Fees .............................................................................. 22

　　3.  Microsoft Fails In Its Attempt To Show That It Suffered Cognizable Damages ................................................................. 23

IV.  MICROSOFT IS UNABLE TO DEFEND THE DISTRICT COURT'S ADMISSION OF IRRELEVANT AND PREJUDICIAL EVIDENCE .................................................................................... 23

A.  Microsoft Ignores Motorola's Key Arguments On The RAND Order's Inadmissibility ......................................................... 23

B.  Microsoft Concedes That The FTC Order Was Inadmissible And Fails In Arguing That Motorola "Opened The Door" ................. 26

CONCLUSION ........................................................................................ 28

CERTIFICATE OF COMPLIANCE WITH  FRAP 32(a)(7)(C) & CIRCUIT RULE 32-1 ........................................................................................ 30

CERTIFICATE OF SERVICE ................................................................ 31

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple, Inc. v. Motorola Mobility, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) ............................................................17, 21, 23

*Apple, Inc. v. Motorola Mobility, Inc.*,
886 F. Supp. 2d 1061 (W.D. Wis. 2012) ....................................................20, 21

*Apple Inc. v. Motorola Mobility, Inc.*,
No. 11-cv-178, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012) ..........................10

*Aqua Shield v. Inter Pool Cover Team*,
No. 14-1263, 2014 WL 7239738 (Fed. Cir. Dec. 22, 2014) ..............................12

*Best v. U.S. National Bank of Oregon*,
739 P.2d 554 (Or. 1987) .....................................................................................6

*Bores v. Domino's Pizza LLC*,
No. 05-2498, 2008 WL 4755834 (D. Minn. Oct. 27, 2008)..............................21

*ClearPlay, Inc. v. Nissim Corp.*,
No. 07-81170-CIV, 2011 WL 6724156 (S.D. Fla. Dec. 21, 2011),
*aff'd* 496 F. App'x 963 (11th Cir. 2012) ...........................................................21

*Ericsson, Inc. v. D-Link Sys.*, No. 13-1625,
2014 WL 6804864 (Fed. Cir. Dec. 4, 2014)..................... 4, 7, 11, 22, 23, 25, 28

*Jerden v. Amstutz*,
430 F.3d 1231 (9th Cir. 2005) ...........................................................................26

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .............................................................................15

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .........................................................................13

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) .............................................................................27

*Microsoft  Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) ......................................................................10, 21

*Oracle Corp. v. SAP AG*,
765 F.3d 1081 (9th Cir. 2014) .....................................................................12, 15

*Palmerin v. City of Riverside*,
794  F.2d 1409 (9th Cir. 1986) ....................................................................24, 25

v

*Powertech Tech. Inc. v. Tessera, Inc.*,
   872 F. Supp. 2d 924 (N.D. Cal 2012) ................................................. 21

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ................................................................................ 21

*Realtek Semiconductor Corp. v. LSI Corp.*,
   No. C–12–03451, 2012 WL 4845628 (N.D. Cal. Oct. 10, 2012) ...... 17

*Riordan v. Kempiners*,
   831 F.2d 690 (7th Cir. 1987) ............................................................. 25

*Solis v. Cnty. of Los Angeles*,
   514 F.3d 946 (9th Cir. 2008) ............................................................... 9

*Spear Pharms., Inc. v. William Blair & Co., LLC*,
   610 F. Supp. 2d 278 (D. Del. 2009) ................................................... 21

*Thompson v. Mahre*,
   110 F.3d 716 (9th Cir. 1997) ............................................................... 9

*United States v. Whitworth*,
   856 F.2d 1268 (9th Cir. 1988) ..................................................... 26, 27

*In re Vylene Enters., Inc.*,
   90 F.3d 1472 (9th Cir. 1996) ............................................................... 5

*In re Vylene Enters., Inc.*,
   105 B.R. 42 (Bankr. C.D. Cal 1989) ................................................. 5, 6

*WhitServe, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ............................................................. 12

*Zidell Explorations, Inc. v. Conval Int'l, Ltd.*,
   719 F.2d 1465 (9th Cir. 1983) ............................................................. 7

## Rules / Statutes

35 U.S.C. § 271 ....................................................................................... 12

35 U.S.C. § 284 ....................................................................................... 12

## Other Authorities

25 Wash. Prac., Contract Law § 5:12 ................................................... 17

## INTRODUCTION

This case is not the standard state-law breach-of-contract case that Microsoft's answering brief paints it to be. It is instead an unprecedented strategic ploy designed to bypass the ordinary process of bilateral negotiation over licensing of standard-essential patents ("SEPs") and to end-run governing Federal Circuit patent law. Microsoft filed this purported contract case on the thin reed of two letters setting forth Motorola's opening offer for a license to Motorola's video and WiFi SEPs—an offer that Microsoft itself had invited after first suing Motorola on separate patents. Rather than send Motorola a counteroffer, as is standard industry practice, Microsoft sought and obtained from the district court after a bench trial an advisory opinion setting a worldwide reasonable and non-discriminatory ("RAND") royalty rate for Motorola's video and WiFi patent portfolios—even though Microsoft nowhere in its complaint requested or agreed to take a court-ordered license. And when Motorola responded to Microsoft's lawsuits by seeking to enforce its SEPs, Microsoft characterized that protected litigation activity as further evidence of Motorola's bad-faith breach of its RAND commitments and obtained from the jury $14.52 million in damages.

If affirmed, the judgment below will encourage SEP infringers like Microsoft to pay nothing for those patents for years, file preemptive contract suits that block meaningful enforcement by SEP-holders, and use the federal court system as a negotiating tool to set worldwide SEP license fees—all without taking even the first

step in the ordinary process of bilateral negotiation. Whatever the issues created by the open-ended nature of RAND commitments, converting the federal courts into worldwide advisory licensing bodies is surely not the solution. And even if it were appropriate to involve the courts in SEP licensing where bilateral negotiations have broken down, this is not a breakdown case.

This Court should reject Microsoft's strategic ploy and reverse or vacate the judgment below based on any or all of: the erroneous jury instructions that shifted the burden on good faith to Motorola and permitted the jury to ignore Motorola's subjective intent; the legal insufficiency of a mere opening offer and the pursuit of injunctive relief to support liability for breach of good faith; the erroneous award of damages based on litigation conduct protected under *Noerr-Pennington* and attorneys' fees that are impermissible as contract damages under Washington law; and the improper admission into evidence of the RAND rate ruling and a Federal Trade Commission ("FTC") investigation and settlement.

These errors are compounded by those in the district court's ruling ("RAND Order") setting a supposed "true" RAND royalty rate. Microsoft makes no effort to defend the inscrutable algorithm the district court invented to calculate that rate—nor could it do so under well-settled Federal Circuit patent damages law, for the district court failed to set a hypothetical negotiation date; relied upon speculative and unproven assumptions; ignored the most comparable licenses; and used

noncomparable pool rates. Microsoft argues only that Federal Circuit patent law does not apply here and that Motorola consented to the court setting the rate. But both are untrue: the court-set RAND rate is patent infringement damages by another name, and Motorola never agreed to the court's bifurcation of the trial, advisory opinion, or *sui generis* valuation formula. Microsoft cannot escape Federal Circuit patent law by restyling patent-infringement defenses as breach-of-contract claims. And the fact that this case morphed into a patent valuation case after this Court's decision in the prior appeal underscores that appellate jurisdiction now properly lies with the Federal Circuit.

## ARGUMENT

## I. MICROSOFT FAILS TO SHOW THAT JURISDICTION PROPERLY LIES IN THIS COURT

Microsoft does not contest (Br. 24-27) that, as a matter of law, a constructive amendment to a complaint—*i.e.*, one that raises and requires resolution of patent issues—may affect the jurisdictional analysis. Microsoft argues (Br. 25) only that the district court's RAND Order did not require the resolution of substantial questions of patent law and that, even if it did, such analysis is legally irrelevant. But as Motorola demonstrated in its opening brief (Br. 18-20), the district court in its purported contract analysis evaluated each patent, its contribution to the standard, and Microsoft's use of such patents.

Microsoft seeks (Br. 25-26) to escape the fact that the district court conducted a patent damages analysis by arguing that patent damages law does not apply to its contract claim. But the Federal Circuit foreclosed such an argument in its recent decision in *Ericsson, Inc. v. D-Link Sys.,* No. 13-1625, 2014 WL 6804864 (Fed. Cir. Dec. 4, 2014), where it ruled under its own case law that, "[a]s with all patents, the royalty rate for SEPs must be apportioned to the value of the patented invention," *id.* at *24. The district court's RAND Order purported to perform this very type of analysis, determining the contribution of Motorola's patents to the standards at issue. ER1624-25, ER1637-38. Such valuation amounts to determining damages for infringing patent use, a determination governed by Federal Circuit law even if the patents are subject to RAND or any other commitment related to the quantum of damages. The district court's decision to construe and value Motorola's patents constructively amended the contract complaint and requires transfer to the Federal Circuit.

## II. MICROSOFT OFFERS NO JUSTIFICATION FOR THE DISTRICT COURT'S ERRORS IN SETTING A RAND RATE

In defending the district court's RAND Order, Microsoft incorrectly argues (Br. 27-42) that Federal Circuit patent damages law does not apply to determination of a RAND rate and that Motorola consented to the district court's bifurcation of the good-faith case and issuance of an advisory opinion. Neither is true.

### A. Microsoft Fails To Defend The District Court's Bifurcation Of The Case

Microsoft offers (Br. 28-30) no support for the district court's holding that it needed to determine the supposed "true" RAND rate and range prior to jury trial on Microsoft's contract claim. As Motorola showed in its opening brief (Br. 20-22), the district court's determination of a "true RAND royalty rate" for Motorola's worldwide portfolio of patents is unsupportable.

#### 1. Microsoft Cites No Legal Support For Separately Determining A "True" RAND Rate

Microsoft points to no case under Washington or any other state's contract law holding that a "true" price term must be determined prior to a jury's evaluation of an alleged breach of good faith. The cases on which Microsoft relies indicate the contrary. Microsoft cites (Br. 29) *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996), for the proposition that the size of the offer may be so extreme as to constitute a breach. But that case proves Motorola's point—not Microsoft's—because the court there did not determine the "true" contract terms in order to evaluate commercial reasonableness. In *Vylene*, this Court reinstated a bankruptcy court finding that a franchisor had failed to act in good faith in negotiating a renewal term for a franchise agreement based on expert testimony that renewal "does not involve a new and different franchise document." 105 B.R. 42, 48 (Bankr. C.D. Cal 1989). But the bankruptcy court did not first set the terms of the agreement. *Id.* at 48-49. And

5

the bankruptcy court also relied upon the fact that the franchisor had violated its obligation to negotiate in good faith when it "conducted **no negotiations** concerning the extension or renewal" of the franchise agreement. *Id.* at 49 (emphasis added). Here, by contrast, it was Microsoft and not Motorola that refused to conduct negotiations, answering Motorola's opening offer letters with this lawsuit rather than so much as the courtesy of a response. Similarly, in *Best v. U.S. National Bank of Oregon*, 739 P.2d 554, 559 (Or. 1987), the court did not determine a reasonable price term in order to evaluate whether the breaching party acted in good faith. Moreover, the *Best* case involves a price term that *one* party to a contract could set ***unilaterally***— unlike a RAND commitment that, as here, requires both parties to negotiate in good faith to arrive at a license agreement.

Motorola never argued that the size of Motorola's offers was not relevant to the good-faith inquiry; rather, Motorola explained in its opening brief (Br. 22) that the size of an offer was "one relevant factor" that the jury could consider without reference to a court-determined "true" rate. The district court here lacked any basis for determining a "true" RAND rate (or range) as a prerequisite for the jury's determination of breach and Microsoft does not show otherwise. *See* ER151 (district court's prior statement that "a jury could make a determination of the RAND royalty rate (or range) on its own"). Other decisions evaluate compliance with a RAND commitment *without* making the threshold determination the district court held

necessary. *See, e.g.*, *Ericsson*, 2014 WL 6804864, at *20 n.8 (reviewing method by which "the *jury* [was] asked to set a RAND royalty rate" in determining damages for SEP infringement) (emphasis added).

### 2. Microsoft Cannot Show That Motorola Consented To The District Court's Bifurcation

Unable to defend the district court's RAND Order under the law of good faith, Microsoft attempts (Br. 30-32) to show that Motorola consented to the district court's bifurcated approach. But to the contrary, Motorola's course of conduct shows that it did *not* consent to the district court's decision to determine a "true" RAND rate prior to the jury trial on good faith, or to the court's *sui generis* valuation methods.

Microsoft relies (Br. 28) upon Motorola trial counsel's isolated statement at a June 14, 2012 status conference in the consolidated patent case that "the court would decide all the material terms of the RAND license." SER71, SER74. But that statement, taken out of context, falls far short of the clear and unequivocal consent required for waiver of the right to trial by jury. *See Zidell Explorations, Inc. v. Conval Int'l, Ltd.*, 719 F.2d 1465, 1469 (9th Cir. 1983) ("[A] waiver of the right to trial by jury on an issue so triable must be clearly proved; equivocal remarks will not suffice."). Motorola immediately stated as part of the same colloquy that it planned to brief the issue of "whether [the court is] deciding all the RAND terms, or what those terms are." SER75. And just weeks later, on July 9, 2012, Motorola advised the district court that it had "been unable to find any authority for a court determining the

terms of a RAND license." SER62-63. At the same time, Motorola specifically stated it had "decided not to waive the jury trial on the breach of the duty of good faith issue." SER64. As Motorola invoked this right, it explicitly stated that "[w]e may have issues with respect to whether the court can instruct the jury as to the proper RAND rate." SER64. Motorola promptly followed those statements with a summary judgment motion filed July 18, 2012, requesting that the district court not proceed with setting the RAND rate prior to any trial on breach. ER989-1017. And the district court itself later abandoned any attempt to set "all of the material terms of the RAND license"—the determination to which Motorola's supposed June 14 consent pertained. *See* ER149 (setting the November 13, 2012 bench trial and stating that it "*will not result in the creation of a RAND license agreement*, but instead will determine a RAND royalty range and a RAND royalty rate" (emphasis added)).

Thus, Motorola's statements in June-July 2012 did not evince consent to the district court's bifurcated approach, and Motorola's course of conduct during this period contradicts any inference of supposed consent. The district court first suggested that it would set the RAND rate and range itself when it issued the anti-suit injunction in May 2012. ER1033-34 (indicating that the court would determine, "in the event Microsoft is entitled to such license, what the RAND terms are for such a license"); *see* ER179-80 (June 6, 2012 order indicating that court would determine the RAND rate prior to any trial on breach). At that point, far from consenting to have the

district court set a RAND rate, Motorola had appealed the district court's anti-suit injunction to this Court, arguing that this Court should reject the district court's purported authority to set the parties' license terms. *See Microsoft Corp. v. Motorola, Inc.*, No. 12-35352, Dkt. 14, at 9-10 (9th Cir. July 16, 2012). In addition, Motorola continued to seek enforcement of its patents against Microsoft in Germany, which Motorola would not have needed to do if it had consented to have the Seattle district court set the parties' worldwide RAND rates.

The single case Microsoft cites (Br. 29) does not support any conclusion that Motorola waived its right to challenge the district court's procedure on appeal. In *Thompson v. Mahre*, 110 F.3d 716 (9th Cir. 1997), not only did the party enter into a stipulation agreeing to a bifurcated proceeding, but he then offered no objection to the proceeding on an earlier appeal of the court's ruling. *Id.* at 721. While a party may not participate in a bench trial without objecting to it and later challenge the procedure, an objecting party may participate in a bench trial and still preserve its argument for appeal. *See Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 955-56 (9th Cir. 2008) ("Once the district court found, erroneously, that Solis had waived his right to a jury trial, Solis had little option but to make his objection known and go forward with the bench trial as best he could."). Here, Motorola made more than clear that it objected to the bifurcated approach and this appeal is the first time Motorola has had an opportunity to seek reversal. *See, e.g.*, ER150, ER989-1017; *see also Microsoft*

*Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012) (declining to decide whether district court's planned approach was permissible). The Seventh Amendment is not a game of "gotcha," and Microsoft cannot rely on one statement to show Motorola's consent when all of Motorola's subsequent statements and actions showed otherwise.

### B. Microsoft Cannot Justify The District Court's Issuance Of An Advisory Opinion

Microsoft does not assert that the RAND Order finally determined any dispute between the parties but instead suggests (Br. 30-32) that the RAND Order was not advisory because royalty rates were relevant to the determination whether Motorola acted in good faith. Microsoft thus suggests that the RAND Order is important *evidence*. But a federal court is not an expert witness tasked with determining a RAND rate with no use or purpose other than as evidence for use in negotiation or at a breach-of-contract trial, as other courts have acknowledged. *See* Motorola Br. 23-25; *Apple Inc. v. Motorola Mobility, Inc.*, No. 11–cv–178, 2012 WL 7989412, at *3, *6-7 (W.D. Wis. Nov. 8, 2012) (dismissing Apple's state-law contract action against Motorola for supposed breach of RAND commitment, noting that Apple had improperly sought advisory assistance "in negotiating, not in putting the parties' dispute to rest").[1]

---

[1] Microsoft's continued reliance (Br. 31) on its complaint's prayer for equitable relief in the form of a judicial "accounting" cannot salvage the RAND Order or its improper

### C. Microsoft Cannot Defend The District Court's Erroneous RAND Ruling

Finally, Microsoft makes no effort to defend the district court's RAND Order on its merits under Federal Circuit patent damages law, instead suggesting only (Br. 33-42) that Federal Circuit precedent does not apply to its contract claim. That is incorrect, and in any event the district court's RAND Order violates basic principles for determining licensing rates in any context.

#### 1. Microsoft Offers No Support For The District Court's Defiance Of Federal Circuit Patent Damages Law

Contrary to Microsoft's suggestion (Br. 33), Federal Circuit patent damages law governs all claims involving valuation of patents—even SEPs subject to a RAND commitment. In its recent decision in *Ericsson*, for example, the Federal Circuit applied its standard patent damages analysis in valuing SEPs, *see Ericsson*, 2014 WL 6804864 at *24-25, finding it "unwise to create a new set of *Georgia-Pacific*–like factors for all cases involving RAND-encumbered patents," *id.* at *23. The same is true here, especially as the royalty rate set by the RAND Order will serve as the damages for Microsoft's infringement of Motorola's patents in Motorola's patent cases consolidated here at Microsoft's insistence.

---

use at jury trial. The district court did not base its bifurcation of the breach trial on that request and never ruled on that request. Nothing in the judgment on appeal refers to this remedy. ER1-2.

Moreover, Microsoft's argument (Br. 41) that not all *Georgia-Pacific* factors are relevant to the district court's analysis is misplaced. Motorola has not contended that every *Georgia-Pacific* factor applies, but rather that, as the Federal Circuit has cautioned, any *Georgia-Pacific* analysis "should concentrate on *fully* analyzing the *applicable* factors." *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31-32 (Fed. Cir. 2012). Compensation for patent infringement (35 U.S.C. § 271) requires analysis of patent damages (35 U.S.C. § 284), and that is governed by Federal Circuit precedent.

Finally, the *Georgia-Pacific* framework is not limited to the patent infringement context. *See, e.g.*, *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (using the framework "to calculate the 'market value'" of copyrighted materials); *see also Aqua Shield v. Inter Pool Cover Team,* No. 14-1263, 2014 WL 7239738, at *4 n.1 (Fed. Cir. Dec. 22, 2014) (quoting *Oracle* on fair market value in patent case). Once the district court adopted the *Georgia-Pacific* framework to value Motorola's SEPs by means of a hypothetical-license reasonable royalty, it was required to apply that framework in accordance with applicable Federal Circuit precedent.

### 2. Microsoft Fails To Justify The District Court's Erroneous RAND Rate

Microsoft attempts (Br. 33-42) but fails to minimize the severity of the multiple errors in the RAND Order.

*First*, Microsoft incorrectly disputes (Br. 33-34) that the district court used an implied hypothetical-negotiation date as of the time of the bench trial or its opinion. The district court did not state what date it used, but because it relied on **Google** as a key point of comparison, ER1617-21 & n.23, the date cannot precede Google's acquisition of Motorola, which did not occur until May 2012.[2] Federal Circuit law, however, requires the analysis to pre-date the circumstances of a lawsuit. Nor does the fact that Motorola offered comparable licenses from 2011 relieve the district court of the obligation to set a date for the hypothetical negotiation. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009) ("[O]ur case law affirms the availability of post-infringement evidence as probative in certain circumstances.").[3]

*Second*, while Microsoft contends (Br. 35-38) that royalties arising out of settlement of litigation may not be the best indicator of a reasonable royalty, that position does not support the district court's disregard for the licenses Motorola entered into evidence during the bench trial. As Motorola explained in its opening brief (Br. 32-33), those licenses were for the same patents at issue in this lawsuit and thus had direct probative value.

---

[2] For this reason, Microsoft's *amici* are likewise wrong to contend (Apple Br. 30; Intel Br. 19) that the district court analyzed the value of the patents at a time that pre-dated the implementation of the standard.

[3] Microsoft further argues (Br. 34) that Motorola failed to advance any hypothetical-negotiation date. That is wrong. Motorola urged a date that pre-dated Microsoft's filing of the lawsuit. Defs.' Post-Trial Br., ECF 623, at 1 (W.D. Wash. Dec. 14, 2012).

*Third*, unlike the licenses that Motorola offered as comparable indicators of value, the district court relied upon patent pools, contending that they align with the purposes of the RAND commitment. ER1615-17, ER1631-33. But there is no evidence that the pool rates at issue here correspond to a license fee arrived at after the bilateral negotiation contemplated by the standard-setting organizations ("SSOs"); they result rather from particular business arrangements that do not distinguish among patents based on technical merit. *See* Motorola Br. 28-29; ER727, ER742, ER744. Microsoft fails to show any patent-law precedent that would allow comparable valuation based on a supposed alignment between pool purposes and a RAND commitment to bilateral negotiation of licenses.

*Fourth*, while Microsoft argues (Br. 38-42) that the pool rates used by the district court have probative value, it nowhere justifies the district court's convoluted algorithm (ER1621 n.23), which no expert advocated. And Microsoft makes no effort to defend or decipher the district court's assignment of values to the variables it created—nor could it do so as key variables in the formula lacked support in the evidence. *See* Motorola Br. 29-32. Under any Circuit's law, the court's opinion must be based on reliable and non-speculative evidence. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012) (reversing "arbitrary and speculative" award of damages); *Oracle Corp.*, 765 F.3d at 1089 (finding

hypothetical-license damages unsustainable because based on an "'undue' amount of speculation").

## III. MICROSOFT FAILS TO SHOW LEGALLY SUFFICIENT EVIDENCE TO SUPPORT THE DAMAGES AWARD AGAINST MOTOROLA FOR BREACH OF THE DUTY OF GOOD FAITH

To support the supposed sufficiency of the jury's determination of breach of good faith, Microsoft relies (Br. 43-64) solely on Motorola's opening offers and pursuit of injunctions after the filing of the complaint based on the offer letters. But those two facts are legally insufficient, independently or together, to sustain the jury's verdict.

### A. Microsoft Cannot Now Rely Upon Any Supposed Direct Breach Of The RAND Commitment

As an initial matter, Microsoft's suggestion (Br. 43-44) that the jury's good-faith verdict can be sustained on an alternative, direct-breach theory is a non-starter. Microsoft did not even introduce the SSO contracts in its affirmative case. *See* Motorola's Rule 50(a) Mot. For J. As A Matter Of Law, ECF 904, at 1 (W.D. Wash. Sept. 4, 2013). In any event, the law of the case precludes any such finding. By the time of the jury trial, the district court had already found that Microsoft could not prove direct breach of the RAND commitment. ER571 ("This case . . . presents a question ***not of direct breach of contract*** but of breach of the duty of good faith and fair dealing." (emphasis added)). As the district court correctly instructed the jury, "[i]nitial offers in a RAND licensing negotiation do not need to be on RAND terms,"

15

ER67, and "[t]he RAND commitment does not by itself bar standards-essential patent owners from ever, in any circumstances, seeking injunctive relief to enforce their patents," ER71; *see also* ER178-79 (holding offer need not be on RAND terms), ER707 ("circumstances change in a manner to warrant injunctive relief"). Because Microsoft did not cross-appeal those rulings, it may not argue now that the evidence supports a finding of direct contract breach based on Motorola's offer letters and pursuit of injunctions.

### B. Microsoft Fails To Show That A Properly Instructed Jury Could Find Motorola's Breach Of Good Faith

#### 1. Microsoft's Arguments Cannot Cure The District Court's Erroneous Instructions On Good Faith

Microsoft fails to defend (Br. 44-47) the district court's good-faith instructions Contrary to Microsoft's suggestion, those instructions erroneously shifted the burden to Motorola to *dis*prove each good-faith factor the court deemed relevant. The court told the jury that it could consider the good-faith factors "alone or in combination" and that consideration of subjective factors was optional. ER65. Under those instructions, if the jury found that Motorola's conduct violated *any* of the relevant considerations, the jury had to find breach. Thus, for example (as Microsoft concedes (Br. 45)), the jury *had* to find breach if it found that Motorola's actions frustrated the purposes of the RAND commitment, even if they conformed to every other relevant factor—industry custom and practice, reasonable expectations of the parties,

subjective good faith, commercial reasonableness, etc. That instruction was error. A jury must consider all relevant factors and should not have been precluded from weighing them all in the aggregate. *See* 25 Wash. Prac., Contract Law § 5:12 ("[G]ood faith is evaluated by an examination of the circumstances surrounding its application and the context in which it is asserted."); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C–12–03451, 2012 WL 4845628, at *5 (N.D. Cal. Oct. 10, 2012) (California law; explaining that, for good faith, "reasonableness turns on the entirety of the terms and circumstances").

The isolation of injunctive relief as a particular fact weighing on the good-faith inquiry, ER71, compounded that error. Nothing in Motorola's express or implied RAND commitments to the SSOs prohibited Motorola from seeking injunctive relief, *see Apple, Inc. v. Motorola Mobility, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014) (holding that RAND commitments impose no per se rule against injunctions to enforce SEPs, which may be justified under certain circumstances), as the district court correctly found, *see also* ER565.

### 2. Microsoft Errs In Arguing That Motorola's Opening Offers And Requests For Injunctive Relief Amount To Breach Of Good Faith

In seeking to defend the sufficiency of the evidence (Br. 47-64), Microsoft cites no case finding breach of good faith based upon an opening offer alone—the sole basis for the initial complaint here, ER1126-28. Nor does it cite any case finding

17

breach of a RAND commitment based on an initial offer *plus* the pursuit of injunctions after the suit was filed—as pleaded in the amended complaint, ER1098-1102. The evidence concerning the opening offers and the injunction requests, separately or together, is insufficient to support liability for breach of good faith.

As to the opening offers, Microsoft argues (Br. 49) that Motorola failed to conform to Motorola's prior practice. But that is incorrect, for Motorola consistently offered 2.25 percent as the first step in negotiations and Microsoft admitted that it rejects initial offers "99 percent of the time." Motorola Br. 37-38; ER353-54. Microsoft further argues (Br. 51-52) that Motorola's offer frustrated the purpose of the RAND commitment because the offer was "consistent with a hold-up strategy" and "failed to account for the dozens of other patent holders." But Microsoft presented no evidence of hold-up and Microsoft represented that hold-up was not a problem in the real world. *See* Motorola Br. 38; ER400-01. As to stacking, no evidence indicated how much—if anything—Microsoft already paid for patents included in the standards. Microsoft relies heavily on the court-determined RAND rate and range, but points to no evidence from the jury trial showing that Motorola had available to it the same information the district court relied upon in determining the RAND rate. In fact, Motorola unquestionably did not. And Motorola had no discretion under the contract that it could exercise in an unreasonable fashion—it had to negotiate to arrive at a mutually agreeable price term. Finally, Microsoft relies (Br. 57-58) on the subjective

good faith of Motorola's Kirk Dailey, but the evidence shows only that Dailey had extensive experience in the cellular portfolio and learned of certain other facts *after* Motorola made the October 2010 offers. *See* Motorola Br. 39.

As to Motorola's pursuit of injunctive relief, Microsoft argues (Br. 60) that "Motorola's only purpose for seeking injunctions was to pressure Microsoft to settle on supra-RAND terms." But the undisputed evidence does not support that assertion. Microsoft itself represented to the FTC in June 2011 that it was not aware of any instance in which a party had attempted to extort above-RAND rates. ER1305 ("Microsoft has never been accused of patent hold-up in this regard, nor has it accused any other company of such behavior."). Nor should Microsoft be allowed to use the advisory RAND Order to offset the lack of evidence that Motorola sought injunctions in bad faith. Microsoft at trial characterized Motorola as unreasonable because it pursued injunctions even though "[a]ll Motorola ever had to do to get a RAND royalty for its patents was let th[is] case unfold," ER225 (Microsoft opening statement); *see* ER519 (Microsoft closing argument). But such characterizations erroneously assume that the contract case was properly before the court in the first place even though it was filed based solely on Motorola's mere opening offers. And Microsoft's characterizations wrongly assume that the court is an advisory licensing body that determines the RAND terms for a license simply because Microsoft requests such advisory relief.

19

### C. Microsoft Fails To Show That It Established Cognizable Damages

Even if it could support liability (it cannot), Microsoft fails (Br. 64-71) to support the legal sufficiency of the damages award.

#### 1. Microsoft Does Not Counter The *Noerr-Pennington* Bar To *Damages* Arising From Protected Litigation Conduct

Rather than address Motorola's argument that *Noerr-Pennington* bars *damages* as compensation for engaging in protected litigation, Microsoft argues (Br. 64-66) that *Noerr-Pennington* does not bar enforcement of the RAND commitment. That is a straw man. Motorola argues not that *Noerr-Pennington* bars Microsoft's contract *action* but rather that it bars the award of *damages* based on the costs associated with responding to Motorola's protected litigation conduct. *See* Motorola Br. 41-42.

The cases Microsoft cites do not support its argument. For instance, while the district court in *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061 (W.D. Wis. 2012), found that *Noerr-Pennington* did not bar enforcement of the RAND commitment, *id.* at 1078, the court separately held that Apple's asserted antitrust *damages* were barred by *Noerr-Pennington* because predicated solely upon "attorney fees and costs that it has incurred responding to the patent litigation initiated by Motorola," *id.* at 1076. That holding applies equally to Microsoft's damages here, which stem solely from Motorola's protected litigation conduct. *See* Motorola Br. 41-42; ER45-46. There is nothing in its RAND commitments precluding Motorola from seeking redress from the courts for infringement of its SEPs, as the district court held

(ER71, ER565, ER707), and the Federal Circuit has confirmed, *Apple*, 757 F.3d at 1331-32.[4]

Nor can Motorola's subjective motivation in bringing its patent infringement lawsuits be considered here. A "lawsuit must be objectively baseless" to trigger the "sham"-suit exception to *Noerr-Pennington* protection, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993), and "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation," *id.* Motorola's lawsuit not only had objective merit, but Motorola succeeded in its lawsuit in Germany. *Microsoft*, 696 F.3d at 879. Microsoft's argument (Br. 66) that it already had filed this RAND lawsuit, "giving Motorola a path to obtaining RAND royalties," ignores that Microsoft's pleadings failed to commit to accept a license and denied infringement. Moreover, nothing in the RAND commitment or patent law dictates that Motorola must relinquish, on a worldwide basis, all enforcement of its patents while Microsoft prosecutes this case.

---

[4] For this reason, the other cases Microsoft cites (Br. 65) are inapposite. *Powertech Tech. Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 931-32 (N.D. Cal 2012), found that the contract contained an explicit waiver of rights. *Bores v. Domino's Pizza LLC*, No. 05-2498, 2008 WL 4755834, at *4 (D. Minn. Oct. 27, 2008), held *Noerr-Pennington* inapplicable where a party "*contractually agreed to pay such a penalty in the event of litigation*." *ClearPlay, Inc. v. Nissim Corp.*, No. 07–81170–CIV, 2011 WL 6724156, at *10 (S.D. Fla. Dec. 21, 2011), *aff'd* 496 F. App'x 963 (11th Cir. 2012), addressed an explicit waiver of patent enforcement rights, and *Spear Pharms., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288 (D. Del. 2009), held only that use of trade secrets in violation of an agreement was unprotected.

### 2.   Microsoft Cannot Justify The District Court's Creation Of A New Exception To The American Rule On Attorney Fees

Microsoft acknowledges that the district court created new Washington law to permit the recovery of attorney fees as contract damages but argues (Br. 66-70) that the American Rule should not apply here because it sought the fees in this action instead of in Motorola's infringement actions.  The American Rule is not so easily circumvented.

Microsoft points to no case permitting a party to obtain attorney fees as damages in a separate action when such recovery would not be permitted in the action in which the fees were incurred.  And the district court relied on no such rationale. Rather, the district court held that it was required to create a new exception to the American Rule despite the fact that Microsoft did not incur the attorney fees in the instant action.  Microsoft characterizes (Br. 69) the court's ruling as creating "a *narrower* exception for suits (and pursuit of injunctions) on RAND-committed patents," but nowhere explains how the RAND commitment bars suits or injunctions. The RAND commitment is not a covenant not to sue.  *See Ericsson*, 2014 WL 6804864, at *25-27 (evaluating propriety of amount of damages award for infringement in light of RAND commitment); *Apple*, 757 F.3d at 1331-32.

22

### 3. Microsoft Fails In Its Attempt To Show That It Suffered Cognizable Damages

Microsoft wrongly argues (Br. 70-71) that, even if Motorola succeeds on its arguments, Microsoft still proved cognizable damages because Motorola did not challenge the award of damages for moving the German distribution facility. That is incorrect. Motorola has argued consistently that *Noerr-Pennington* prohibits recovery of damages "from Microsoft's costs incurred in response to Motorola's requests for injunctive relief to enforce its patents in the district courts, the ITC, *and the German courts*." Motorola Br. 41 (emphasis added); *see also* ER45-46 (jury verdict form awarding attorney fees and costs incurred in moving distribution facility).[5]

## IV. MICROSOFT IS UNABLE TO DEFEND THE DISTRICT COURT'S ADMISSION OF IRRELEVANT AND PREJUDICIAL EVIDENCE

### A. Microsoft Ignores Motorola's Key Arguments On The RAND Order's Inadmissibility

Microsoft attempts (Br. 74-78) to reduce Motorola's argument that introduction of the RAND Order findings was error to one of timing. But the fact that Motorola could not have known the myriad facts available to the district court when it determined the RAND rate and range is only one of the many problems with permitting introduction of the RAND rate.

---

[5] Microsoft's argument (Br. 71) that nominal damages would be permissible because "Microsoft sought broad equitable relief" fails to point to any such requested relief that Microsoft still sought as of the time of the breach-of-good-faith trial.

*First*, as to timing, Microsoft fails to explain (Br. 74-76) how any of the information that *Microsoft* put before the district court during the bench trial was available to Motorola prior to Motorola sending its offer letters. Nor could it do so, for Microsoft never engaged in pre-suit negotiations.

*Second*, Microsoft argues (Br. 77-78) that Motorola waived the right to preclude introduction of the RAND Order findings. But that is incorrect. *See supra*, at 7-10. Moreover, even if Motorola had waived that right (it did not), the district court's prior orders contemplated only that it would determine the "true RAND royalty rate." ER140; *see* ER105, ER179-80. Any jury trial waiver must be narrowly construed. Whatever the scope of Motorola's alleged concession, it did not extend to Microsoft's introduction of the factual findings in the RAND Order at trial, in violation of Motorola's Seventh Amendment rights, or the prejudicial restrictions placed on Motorola's ability to explain and rebut those findings. *See* Motorola Br. 48-53.

*Third*, Microsoft, without citation, argues (Br. 76) that Motorola cannot object to the district court's ruling that witnesses could not contradict the RAND Order because Motorola "identifies no proffered testimony that was barred." But this Court has held that, "where the substance of the objection has been thoroughly explored during the hearing on the motion *in limine*, and the trial court's ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence." *Palmerin v. City of*

24

*Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986). Motorola raised this very issue in its motion in limine and the district court's unequivocal order directed that the parties could not contradict the RAND Order. ER100-10, ER188, ER260; *see also* Defs.' Mot. in Limine, ECF 795, at 1-9 (W.D. Wash. July 29, 2013) (motion in limine seeking exclusion of RAND findings). The district court abused its discretion in issuing such a "blanket exclusion of evidence," *Riordan v. Kempiners*, 831 F.2d 690, 699 (7th Cir. 1987), contradicting the RAND Order. At a minimum, Motorola was not required to proffer such evidence in light of the district court's explicit ruling.

In any event, Motorola did proffer evidence such as the RIM license, and Microsoft distorts the trial record in describing (Br. 76) the district court's limiting instruction that the RIM license was not indicative of a RAND rate as a "balanced ruling." The district court's supposed cure served only to amplify the prejudice to Motorola. ER240, ER257. As the Federal Circuit recently concluded, a jury evaluating the RAND commitment specifically *may* rely on prior licenses. *Ericsson*, 2014 WL 6804864, at *20. The jury was capable of giving the license the weight it was due.

*Fourth*, the RAND Order in any event lacked probative value because, *even if* Motorola could have known the facts upon which the district court relied to reach that rate (it could not), the district court acknowledged that it had no evidence to support certain variables essential to its invented algorithm. *See* Motorola Br. 28-32.

*Fifth*, Microsoft errs in arguing (Br. 78) that the RAND Order's findings other than rate and range could not have prejudiced the verdict because they could not affect the jury's separate finding of breach based on Motorola's requests for injunctive relief. To the contrary, those findings—for example, that Motorola's patents constitute only "a sliver" of the technology incorporated in the 802.11 and H.264 standards (which Microsoft emphasized in its opening and closing arguments, ER219, ER518)—relate directly to the reasonableness of Motorola's requests for injunctive relief, as Microsoft itself recognizes in its brief (Br. 62).

### B. Microsoft Concedes That The FTC Order Was Inadmissible And Fails In Arguing That Motorola "Opened The Door"

Microsoft, in defending (Br. 71-74) the introduction of the FTC order, does not dispute that introduction of the FTC investigation of Motorola's licensing practices and subsequent settlement was prejudicial to Motorola. Instead, Microsoft seeks (Br. 71-72) to justify the district court's abuse of discretion in admitting that order by arguing that Motorola "opened the door" for such evidence. That is incorrect. The rule of curative admissibility permits a party to introduce otherwise inadmissible evidence only "on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988); *see also Jerden v. Amstutz*, 430 F.3d 1231, 1237 n.9 (9th Cir. 2005). The rule specifically "does not permit the introduction of evidence that is related to a

different issue or is irrelevant to the evidence previously admitted." *Whitworth*, 856 F.2d at 1285.

Here, the FTC's investigation into Motorola's licensing practices does not refute the fact that *Microsoft* made its statements to the FTC—and in fact did so in an entirely different FTC proceeding, the Patent Standards Workshop, which was a policy initiative and not an enforcement action. ER433, ER1299. Nor can Microsoft use the FTC investigation of Motorola to attempt to show that its *own* statements to the FTC were untrue.

The case Microsoft cites (Br. 71) supports the proper use of the "open the door" excuse for the admission of otherwise admissible evidence. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011). In that case, defense counsel questioned a witness about the number of lawsuits the defendant firm had filed previously. *Id.* at 954. Counsel for the plaintiff therefore was permitted to introduce a list of lawsuits the defendant had filed. *Id.* Such evidence concerns the exact same subject matter. Microsoft here, by contrast, seeks (Br. 71) to expand application of the doctrine to all "FTC-related evidence." Such an expansion of the exception would swallow the rule.

Moreover, as the Federal Circuit recently confirmed, Motorola's introduction of Microsoft's own statement in June 2011 that no evidence of real-world hold-up exists was of particular relevance to rebut Microsoft's reliance on the possibility of hold-up

in this case. *See Ericsson*, 2014 WL 6804864, at *25 (holding analysis of hold-up and royalty-stacking concerns improper "unless the accused infringer presents actual evidence of hold-up or stacking"). Microsoft argues that the FTC investigation concerned the same "wrongs," but fails to explain how that could be the case given the lack of any evidence of hold-up in this case and Microsoft's statements that no such evidence of real-world hold-up existed generally.

Finally, Microsoft entirely fails to address Motorola's Rule 408 argument, and no argument could cure the district court's violation of Rule 408. The accusations of an FTC investigation and settlement involving Motorola's conduct had an outsized and prejudicial effect on the jury's evaluation of Motorola's good faith and fair dealing. The only plausible purpose for its introduction (and focus at closing argument) was to invite the jury to find that—in this complex case of patent licensing between sophisticated companies—Motorola must have been acting wrongly because the government thought so and Motorola settled. The evidence should have been excluded and its admission warrants a new trial.

## CONCLUSION

For the foregoing reasons, the judgment should be reversed and entry of judgment ordered for Motorola. In the alternative, the judgment should be vacated and the case remanded for new trial.

DATED: New York, New York     QUINN EMANUEL URQUHART &
        December 29, 2014         SULLIVAN, LLP

By: s/ Kathleen M. Sullivan
      Kathleen M. Sullivan
      Ellyde R. Thompson
      QUINN EMANUEL URQUHART &
      SULLIVAN, LLP
      51 Madison Avenue, 22nd Floor
      New York, NY 10010-1601
      (212) 849-7000

      Brian C. Cannon
      QUINN EMANUEL URQUHART &
      SULLIVAN, LLP
      555 Twin Dolphin Drive, 5th Floor
      Redwood Shores, CA 94065
      (650) 801-5000

**CERTIFICATE OF COMPLIANCE WITH**
**FRAP 32(A)(7)(C) & CIRCUIT RULE 32-1**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached reply brief is proportionately spaced, has a typeface of 14 points or more and contains 6,854 words.

s/ Kathleen M. Sullivan
*Attorney for Defendants-Appellants*

December 29, 2014

30

**CERTIFICATE OF SERVICE**

I, Kathleen M. Sullivan, a member of the Bar of this Court, hereby certify that on December 29, 2014, I electronically filed the foregoing "Reply Brief of Defendants-Appellants" with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Kathleen M. Sullivan